Arvie Gene TRUMBLE, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. 73665.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 24, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 18, 1999.

Jeremiah W. (Jay) Nixon, Attorney General, Evan J. Buchheim, Assistant Attorney General, Jefferson City, MO, for appellant.

Michael J. Gorla, St. Louis, MO, for respondent.

HOFF, Presiding Judge.

The Director of Revenue (Director) appeals from a judgment reinstating the driv-

ing privileges of Arvie Gene Trumble (Driver) after a trial *de novo* pursuant to section 302.535, RSMo Cum.Supp.1997. We reverse and remand.

On March 7, 1997, a police officer for the Brentwood police department in St. Louis County saw a vehicle driven by Driver weaving across double yellow lines. The officer stopped Driver who admitted that he had been drinking. The officer administered a field sobriety test and then arrested Driver for driving while intoxicated. At the police station, the officer performed a breath analysis test. The test showed Driver had a blood alcohol content of .20 percent. Director suspended Driver's driving privileges after an administrative hearing.

Driver filed a petition for trial *de novo* in St. Louis County pursuant to Section 302.535, RSMo Cum.Supp.1997. At the trial on November 4, 1997, Director offered three exhibits: (1) Exhibit A, ordinance; (2) Exhibit B, a packet of records including the police and arrest report, Alcohol Influence Report, checklist for breath test, the officer's valid permit and breath test results; and (3) Exhibit C, maintenance report and certificate of analysis. Both Exhibit B and Exhibit C were accompanied by affidavits from the custodian of records of the Brentwood Police Department, certifying the records were business records in accordance with Section 490.680, RSMo 1994. After counsel's objection, the court refused to admit Exhibit C and the portion of Exhibit B that contained the breath test result. The trial court entered judgment reinstating Driver's driving privileges. The court noted that "The certificate of analysis provided by RepCo Marketing is not admitted for the reason it contains double hearsay." Director appeals.

■ Our review of the trial court's decision is controlled by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Cain v. Director of Revenue*, 896 S.W.2d 724, 726 (Mo.App. E.D.1995). Therefore, the decision of the trial court will be affirmed unless it is not supported by substantial evidence, it is

against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32.

In her two points on appeal, Director argues the trial court erred in refusing to admit the certificate of analysis and breath test results and the trial court's judgment was against the weight of the evidence.[1]

■ To suspend a license under section 302.505, the Director must show by a preponderance of the evidence that the police had probable cause to arrest the driver for driving while intoxicated and the driver's blood alcohol content exceeded the legal limit at the time of his arrest. *Peeler v. Director of Revenue*, 934 S.W.2d 329, 331 (Mo.App. E.D. 1996). To establish a *prima facie* foundation for the admission of breath analysis test results, Director must show: (1) the test was performed by following techniques and procedures approved by the Department of Health; (2) the operator of the machine held a valid permit; and (3) the equipment and devices used in the test were approved by the Department of Health. *Sellenriek v. Director of Revenue*, 826 S.W.2d 338, 340–341 (Mo. banc 1992); *Poage v. Director of Revenue*, 948 S.W.2d 194, 196 (Mo.App. E.D. 1997).

■ In Director's initial brief, it was argued that the certificate of analysis comported with the Department of Health regulation, 19 CSR 25–30.050(4). However, a new Department of Health regulation, 19 CSR 25–30.051, which addresses certificates of analysis, became effective September 1, 1997, after Driver's arrest but prior to his trial. Regulations concerning procedural rules apply retrospectively and therefore, we review under the revised regulation. *Vilcek v. Director of Revenue*, 974 S.W.2d 602, 604 (Mo.App. E.D.1998); *Mullins v. Director of Revenue*, 946 S.W.2d 770, 772 (Mo.App. E.D. 1997).

Nineteen CSR 25–30.051 provides in relevant part:

---

1. We are aware of a similar case, *Tate v. Director of Revenue*, 982 S.W.2d 724, to be handed down simultaneously with this opinion where Division Five of this Court addresses the identical issues presented here. We have borrowed extensively from that opinion to maintain consistency between the two cases.

(1) Standard simulator solutions, used to verify and calibrate evidential breath analyzers at the 0.10% or 0.100% level, shall be certified by the suppliers of that solution to have an ethanol, in aqueous solution, concentration of 0.1210 g/dl ± 3% (wt./vol.). This solution shall produce a vapor alcohol value of 0.100% ± 3% when heated to 34 degrees ± 0.2 degrees Celsius in a simulator.

. . .

(3) The certificate shall include the name of the supplier, the lot or batch number of solution, the ethanol concentration in aqueous solution, and the expiration date. Evidence of that certification shall accompany the maintenance report in the form of writing on the maintenance report the supplier of the solution, the ethanol in vapor concentration, lot or batch number, and the expiration date. A photocopy of that certificate shall be attached to the maintenance report.

(4) Maintenance reports completed on or after March 26, 1996, and prior to the effective date of this rule shall be considered valid under this rule if a certificate of analysis was supplied with the simulator solution. Maintenance reports completed prior to March 26, 1996, shall be considered valid under this rule if done in compliance with the rules in effect at the time the maintenance report was conducted.

Although the previous regulation, 19 CSR 25–30.050(4), was at issue in *Overmann v. Director of Revenue*, 975 S.W.2d 183 (Mo. App. E.D.1998), we find that decision applicable to the present case. *See, Vilcek*, 974 S.W.2d at 604. In *Overmann*, the driver argued the certificate of analysis was "hearsay on hearsay" and failed to meet the requirements of The Uniform Business Records as Evidence Law, Section 490.680, RSMo 1994. *Id.*

■ The court noted that under 19 CSR 25–30.050(4), Director was only required to show (1) the police department used a solution certified by the solution's manufacturer

in calibrating the breath analysis machine; and (2) the police department attached proof of the manufacturer's certification to the maintenance report that the police department submitted to the Department of Health. *Id.* at 185–86, *quoting, Dickerson v. Director of Revenue*, 957 S.W.2d 478, 480–81 (Mo.App. E.D.1997). This Court held that Section 490.680 provides a statutory exception to the hearsay exclusionary rule by permitting the admission of business records if the custodian of the records or other qualified witness establishes a proper foundation by attesting to the records' identity and mode of preparation. *Id.* at 185. Furthermore, if there is a proper attestation by affidavit under Section 490.692, RSMo 1994, then the certificate of analysis is admissible as a business record to demonstrate that the police complied with the requirements of 19 CSR 25–30.050(4). *Id.* at 186.

■ Here, Director attached the certificate of analysis to the maintenance report and an affidavit from the custodian of records to demonstrate the police had complied with the Department of Health regulations in maintaining its breath analyzer. The affidavit conforms to that required by Section 490.692. Therefore, Director laid a proper foundation for the admission of the certificate of analysis as a business record and the trial court's stated reason for excluding the breath test results because they were hearsay is erroneous. However, a bench-tried judgment that reaches a correct result will not be set aside even if the trial court gives a wrong or insufficient reason for its judgment. *Dent v. Director of Revenue*, 977 S.W.2d 281, 282 (Mo.App.E.D. 1998).

■ At trial, Driver also argued the certificate of analysis was not in proper form and Director had failed to comply with the Department of Health regulations. Subsection (3) of 19 CSR 25–30.051 states, "the certificate shall include the name of the supplier." [2] The certificate before this court shows RepCo Marketing Inc. at the top of the certificate and provides that samples of

**2.** A new regulation, 19 CSR 25–30.051, addressing standard simulator solutions, became effective May 4, 1998 and provides that standard simulator solutions "shall be solutions from approved suppliers." Subsection (3) lists the approved suppliers of standard simulator solutions with RepCo Marketing, Inc. listed as one of three approved suppliers.

the solution were analyzed by an independent laboratory. The certificate is signed by the president of RepCo Marketing Inc. The certificate lists the lot number, test results, and the expiration date for the tested lot. However, the certificate has no language indicating that RepCo is the actual supplier of the solution. Further, there was no testimony regarding who supplied the simulator solution to the police department. On the maintenance report, the officer wrote down, "Repco Marketing Inc. Lot # 96001", but there is no language actually indicating that RepCo supplied the solution.

In two recent cases before this Court, we found that the Director failed to establish the necessary foundation for admission of breathalyzer results where the certificate of analysis failed to include the manufacturer of the solution as required by 19 CSR 25–30 .050(4). *Dent*, at 282; *McDonough v. Director of Revenue*, 977 S.W.2d 278, 279–80 (Mo.App.E.D. 1998). While those certificates had contained the name of RepCo Marketing Inc., there had been no evidence to indicate that RepCo was actually the manufacturer. *Dent*, at 282; *McDonough*, at 279–80. Those cases were decided under 19 CSR 25–30.050(4), which required the simulator solutions to be certified by the manufacturer. The rule in question here, 19 CSR 25–30.051, requires the simulator solutions be certified by the *supplier*. However, the same reasoning used in *McDonough* and *Dent* applies and it initially seems that the certificate of analysis fails to conform to 19 CSR 25–30.051(1) and (3), unless some exception applies.

In response, Director argues that an exception does apply. Subsection (4) of 19 CSR 15–30.051 provides that maintenance reports completed on or after March 26, 1996, but before the effective date of September 1, 1997, are valid if a certificate of analysis was supplied with the solution. Director maintains that she has met her burden under this subsection because the maintenance report was completed on February 20, 1997, and a certificate of analysis was supplied with the solution.

In interpreting administrative rules, we rely on the same principles of construction as those used in interpreting statutes. *Woolridge v. Woolridge*, 915 S.W.2d 372, 378 (Mo.App. W.D.1996). When examining a subsection of a rule, it must be viewed in light of the entire regulation and if possible, harmonized with that regulation. *Mullins v. Director of Revenue*, 946 S.W.2d 770, 771 (Mo.App. E.D.1997); *Frene Valley Corp. v. Dept. of Social Services*, 926 S.W.2d 144, 146 (Mo.App. E.D.1996). The primary rule of statutory construction is to ascertain the lawmaker's intent from the language used and give effect to that intent, while considering the words used in their plain and ordinary meaning. *Tuft v. City of St. Louis*, 936 S.W.2d 113, 119 (Mo.App. E.D.1996).

Here, the rule provides certain standards with which a police department must comply in verifying and calibrating its breath analyzers. Subsections (1) through (3) set forth those standards in specificity. However, in subsection (4), the Department of Health provides an exception for complying with those subsections for reports completed on or before March 26, 1996 until September 1, 1997. For those maintenance reports, it is sufficient simply if a certificate of analysis was supplied with the simulator solution. The clear intent of the lawmakers, even while viewing the regulation in its entirety, was to exempt those reports from complying with the technicalities outlined in the prior three subsections. Therefore, in the case at hand, there was no necessity for the certificate of analysis to conform to the requirements outlined in subsection (3).

We find further support for this conclusion in *dicta* language used in this Court's opinion in *Vilcek*, 974 S.W.2d at 605. In *Vilcek*, this Court held that if the requirements of The Uniform Business Records as Evidence law, section 490.680, RSMo 1994, are met, then the certificate of analysis is admissible as a business record to demonstrate that the police complied with the requirements of 19 CSR 25–30.051. *Id.* The Court found the Director had established a foundation for admission of the breathalyzer test. In *dicta*, the Court then noted: "In addition, the maintenance report is considered valid under the

language of 19 CSR 30.051(4)."[3] *Id.* In making this note, the Court implied the Director only needed to show compliance with subsection (4) of 19 CSR 25–30.051 to meet Department of Health guidelines.

In the case at hand, Director met her burden by including in the business records the certificate of analysis provided with that lot number of simulator solution used to calibrate the breathalyzer. Therefore, the Director established the proper foundation for admission of the business records in question through the officer's affidavit. The trial court, therefore, erroneously applied the law and abused its discretion in refusing to admit the business records. The judgment is reversed and remanded for a new trial. *Dickerson*, 957 S.W.2d at 481.

GARY M. GAERTNER and RHODES RUSSELL, JJ., concur.

---

3. The maintenance report in question was completed on March 22, 1997.