**James Paul HUNT, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

No. 73514.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 3, 1999.

Jeremiah W. (Jay) Nixon, Atty. Gen., Nadia Termanini, Asst. Atty. Gen., Jefferson City, for appellant.

Timothy M. Joyce, Warrenton, for respondent.

PAUL J. SIMON, Presiding Judge.

The Director of Revenue (Director) appeals the judgment of the Circuit Court of St. Charles County, Missouri, setting aside the revocation of driving privileges of James Paul Hunt (Driver).

On appeal, Director contends the trial court erred by: (1) setting aside Hunt's revocation because it erroneously applied the law, and the judgment is against the weight of the evidence in that Driver was arrested upon probable cause that he was driving in violation of an alcohol related offense; (2) excluding the maintenance report because it erroneously applied the law in that the Director did not need to produce a certificate of analysis under 19 CSR 25–30.051 for maintenance reports completed before March 26, 1996; and (3) setting aside Driver's revocation because it is an erroneous application of the law and

is not supported by substantial evidence in that the Director proved Driver had a blood alcohol content of .10 percent or more in that Driver only objected to the admission of the maintenance report, and the breath test results were admitted without objection. We reverse and remand.

Reviewing a court tried case, we affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares, or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976).

The record on appeal shows that on July 16, 1995, Deputy J. Woerther of the St. Charles County Sheriff's Department observed a gray Lincoln traveling north on Highway T in St. Charles County. Woerther observed the automobile moving from the shoulder on the right side of the northbound lane, over the center line into the southbound lane, and back on to the right shoulder. Woerther attempted to position his vehicle closer to that of Driver. At that time, Driver used the southbound lane to pass a car while going up a hill. Woerther then activated his vehicle's emergency lights and audible siren, passed the car that Driver had just passed and pulled over the vehicle that Driver was operating and in which a female was a passenger. After being pulled over, Driver exited the car and approached Woerther.

Upon contact with Driver, Woerther observed an odor of alcohol on Driver's breath and noticed Driver's speech to be slurred and his eyes to be glassy and bloodshot. Further, Woerther observed that Driver appeared to have trouble balancing himself as he stood. Woerther issued three citations to Driver. The first citation was for violating section 304.015, RSMo 1994 (all further references shall be to RSMo 1994 unless otherwise indicated) by failing to drive on the right half of the roadway when there was sufficient width, the second citation was for violating section 304.016 by driving his vehicle to the

left side of the roadway when his view was obstructed by a hill, and the third citation was for violating section 577.010 by operating a motor vehicle while in an intoxicated condition. Severe lightning and heavy rain prevented Woerther from performing field sobriety tests on Driver at the site where he was pulled over. Woerther transported Driver and his female companion to the St. Charles County Sheriff's Department. On the way to the Sheriff's Department, Driver made a spontaneous utterance that he and his female companion had consumed two bottles of wine at the wineries in Augusta. Driver was given three field sobriety tests at St. Charles County Adult Detention, which he failed. After failing the three sobriety tests, Driver was read his Miranda rights and waived them. When asked for a breath sample, Driver indicated that he wished to contact his lawyer. Driver was given access to a phone and a directory, but made no attempt to contact anyone. Driver voluntarily submitted to a breath test, which was administered by Deputy R.E. Koester of the St. Charles County Police Department. The breath test indicated that Driver's blood alcohol concentration (BAC) was .16 percent.

Subsequently, Driver was arrested and charged with driving while intoxicated. The arresting officer gave Driver a notice of revocation of his driving privileges in accordance with section 302.505, and Driver made a timely request for an administrative hearing under section 302.530. The administrative hearing officer sustained the revocation of Driver's driving privileges. Driver filed a timely petition for trial *de novo* under section 302.535.

At the trial *de novo* on October 18, 1997, Director offered exhibits A and B pursuant to the business records exception. Exhibit A contained Department of Revenue records consisting of: Driver's driving record, the citation issued to Driver for driving while intoxicated, the Alcohol Influence Report, the operational checklist for the breath analyzer used to test Driver, the

breath analyzer printout, the breath analyzer maintenance report and the written narrative setting out what Woerther observed. Driver objected to Exhibit A, complaining that it did not contain the findings of fact and conclusions of law of the administrative hearing officer, and that some of the reports of the police officers were subject to cross examination and may have been hearsay. Driver's general objection to the admission of exhibit A was overruled, but the trial court reserved the right to rule on objections to specific parts of the exhibit later in the trial.

Director then offered exhibit B, containing records of the Department of Revenue consisting of the maintenance report on the breath analyzer device used by Driver, printouts which accompany the report and the type II permit authorizing the testing officer to perform such maintenance checks. Director argued the maintenance report was prepared before any regulation requiring evidence of a manufacturer's certification (certificate of analysis) of the simulator solution used to verify and calibrate the breath analyzer went into effect, and therefore no certificate was required, nor was any attached. Director relied on our holding in *Declue v. Director of Revenue*, 945 S.W.2d 684 (Mo.App. E.D.1997), and the newest rule then in effect, 19 CSR 25–30.051, in arguing that regulations requiring a certificate of analysis were not retroactive.

In his objection to the admittance of exhibit B, Driver contended that evidence of the manufacturer's certification was required to be attached to the maintenance report for verification of Driver's BAC under *Fronabarger v. Director of Revenue*, 950 S.W.2d 258 (Mo.App. E.D.1997). *See* 19 CSR 20–30.050. In *Fronabarger*, we held that breath analyzer results were not admissible when there was no evidence that the solution used to calibrate the breath analyzer was certified by the manufacturer, and without this evidence, the record would not be sufficient to sustain a revocation of a driver's driving privileges. *Fronabarger*, 950 S.W.2d at 259.

The trial court sustained Driver's objection to exhibit B. It stated that, because the old rule had already been applied retrospectively, the expression of an intent in a newer rule to limit that retrospective application would not be sufficient to go back and limit the original application of the old rule. The court stated that, in order to reach the result desired by Director, a contrary intent would have to have been expressed by the original, earlier rule. Director then made an offer of proof as to what exhibit B stated, which the trial court denied. The trial court sustained Driver's petition for review and overruled the administrative hearing officer's finding that Driver operated a vehicle while his BAC was at least .10 percent. The trial court further found that the arresting officer did not have probable cause to arrest Driver for driving while intoxicated or an alcohol-related offense. The record fails to reveal arguments by either party on the issue of probable cause. There were no witnesses called by either party.

In her first point on appeal, Director argues that the trial court erred in setting aside Driver's revocation because it erroneously applied the law and the judgment was against the weight of the evidence in that Driver was arrested upon probable cause that he was driving in violation of an alcohol-related offense. Director relies on the written narrative of Woerther, in which he states that he observed Driver swerving over the dividing line on Highway T, that he smelled alcohol on Driver's breath, that Driver's eyes appeared glassy and bloodshot and that Driver appeared to have trouble balancing himself. Driver does not address this point in his brief.

To properly revoke driving privileges under section 302.505.1, Director must show: (1) the driver was arrested upon probable cause that he was driving in violation of an alcohol-related offense; and (2) the driver had been driving at a time

when his blood alcohol content was at least .10%. *Rogers v. Director of Revenue*, 947 S.W.2d 475, 476–77 (Mo.App. E.D.1997). Director has the burden of proving her case. Section 302.535.1. Probable cause to arrest exists when a police officer observes an unusual or illegal operation of a motor vehicle and observes indicia of intoxication when coming into contact with the motorist. *Oughton v. Director of Revenue*, 916 S.W.2d 462, 464 (Mo.App. E.D.1996). Thus, the specific probable cause to arrest for an alcohol-related traffic violation and support an administrative license suspension may be developed after the initial stop of the driver. *Aron v. Director of Revenue*, 737 S.W.2d 718, 719 (Mo.banc 1987).

█ The uncontroverted facts contained in Woerther's narrative show that he observed Driver's vehicle swerving from the shoulder on the right of the northbound lane of Highway T, across the dividing line, and back to the shoulder. Driver also passed a vehicle by using the northbound lane while a hill obstructed his view. These actions constitute an illegal operation of a motor vehicle for which Woerther issued Driver a citation. *See* sections 304.015 and 304.016. After stopping Driver, Woerther smelled alcohol on Driver's breath. He noticed that Driver's speech was slurred and his eyes appeared glassy and bloodshot. Woerther also noticed that Driver appeared to have trouble balancing himself. These facts have been held to be indicia of intoxication. *See Rogers*, 947 S.W.2d at 477.

The probable cause test set forth in *Oughton* is satisfied by Woerther's observance that Driver illegally operated his vehicle and the indicia of intoxication displayed by Driver upon his contact with Woerther. *See Oughton*, 916 S.W.2d at 464. Therefore, the trial court's finding that the arresting officer did not have probable cause to arrest Driver is an erroneous application of the law.

In her second point on appeal, Director contends that the trial court erred in excluding the maintenance report because it erroneously applied the law in that the Director did not need to produce a certificate of analysis under 19 CSR 25–30.051(4) for maintenance reports completed before March 26, 1996.

Nineteen CSR 25–30.051(4) provides:

Maintenance reports completed on or after March 26, 1996, and prior to the effective date of this rule shall be considered valid under this rule if a certificate of analysis was supplied with the simulator solution. Maintenance reports completed prior to March 26, 1996, shall be considered valid under this rule if done in compliance with the rules in effect at the time the maintenance report was conducted.

The effective date of this rule was September 1, 1997. Director cites *Mullins v. Director of Revenue*, 946 S.W.2d 770, 772 (Mo.App. E.D.1997) for the proposition that 19 CSR 25–30.051(4) is applicable because it is a procedural regulation and should be applied retrospectively. Director contends that this application creates an exception to the required attachment of certificates of analysis for maintenance reports completed before March 26, 1996, such as the report at issue here which was completed July 13, 1995. Further, Director contends that she complied with the rules in effect at the time the maintenance report was completed as required by 19 CSR 25–30.051(4).

Driver argues that the applicable regulation is 19 CSR 20–30.050(4), effective March 25, 1996, which provides in pertinent part: "Approved standard simulator solutions used to verify and calibrate breath analyzers shall be certified by the manufacturer of that solution, and evidence of such certification shall accompany the maintenance report." Driver contends that the trial court was correct in ruling that, because the Director did not produce the certificate of analysis with the maintenance report, this regulation prohibited the admittance of Driver's breath test,

thus preventing Director from proving that the BAC of Driver was at least .10 percent. In his brief, Driver relies heavily on our holding in *Fronabarger* for the proposition that 19 CSR 20–30.050(4) should be applied retrospectively, and that once applied retrospectively, the presence of a certificate of analysis is necessary to sustain the revocation of Driver's driving privileges. *See Fronabarger*, 950 S.W.2d at 259.

■ To gain admission of breath test results, the Director must show: (1) the test was performed by the approved techniques and methods of the Division of Health, (2) the operator held a valid permit, and (3) the equipment and devices were approved by the Division. *Sellenriek v. Director of Revenue*, 826 S.W.2d 338, 340–41 (Mo.banc 1992). Director argues that all three requirements would have been satisfied if the trial court had correctly applied 19 CSR 25–30.051(4). Driver does not contest that the operator held a valid permit, nor that the equipment and devices were approved by the Division. He does argue that the Division required the presence of a certificate of analysis under what he argues was the applicable rule, 19 CSR 20–30.050(4), and therefore the Director failed to satisfy the first part of the rule in *Sellenriek*. *Id.*

■ Initially, we must determine which rule is applicable. Generally statutory enactments are deemed to operate prospectively because the Missouri Constitution forbids the enactment of a retrospective law which impairs a vested right. *St. Louis Police Officers' Ass'n v. Sayad*, 685 S.W.2d 913, 917 (Mo.App. E.D.1984); Mo. Const. Art. I, Sec. 13. However, a procedural statute operates retrospectively unless a contrary intent appears from the terms of the enactment. *Sayad*, 685 S.W.2d at 917. The same doctrines apply to administrative rules. *Id.* Since the pertinent Department of Health regulation establishes the method of enforcing rights and processing of legal action to enforce those rights, but does not impair a vested

right, it is a procedural rule and applies retrospectively. *See Declue v. Director of Revenue*, 945 S.W.2d 684, 686 (Mo.App. E.D.1997).

In *Vilcek v. Director of Revenue*, 974 S.W.2d 602, 604 (Mo.App. E.D.1998) we held that 19 CSR 25–30.051 applies in place of 19 CSR 20–30.050 in cases where the effective date of the former falls in between the date of the driver's arrest and the date of his trial. The fact that the effective date of the latter also falls between the date of Driver's arrest and his trial is of no consequence, the more recent rule is the applicable rule. Therefore, we apply 19 CSR 25–30.051. In light of the application of 19 CSR 25–30.051, our decision in *Fronabarger* is distinguishable to the extent that it was decided while 19 CSR 20–30.050 was still the applicable rule and before 19 CSR 25–30.051 went into effect. *See Fronabarger*, 950 S.W.2d at 259. Accordingly, neither *Fronabarger*, nor 19 CSR 20–30.050(4) apply.

Since 19 CSR 20–30.050 and 19 CSR 25–30.051 are procedural and apply retrospectively, we must now determine whether the retrospective application of 19 CSR 20–30.050(4) is affected by the later activation of 19 CSR 25–30.051(4) which purports to amend the first rule so it would apply only from its effective date forward.

■ In interpreting administrative rules, we rely on the same principles of construction as those used in interpreting statutes. *Trumble v. Director of Revenue*, 985 S.W.2d 815, 819 (Mo.App. E.D.1998). The primary rule of statutory construction is to ascertain the lawmaker's intent from the language used, and give effect to that intent, while considering the words used in their plain and ordinary meaning. *Id.* Where the language of the statute is clear and unambiguous, there is no room for construction. *Jones v. Director of Revenue*, 832 S.W.2d 516, 517 (Mo.banc 1992). The language of 19 CSR 25–30.051(4) indicates that maintenance reports which were completed prior to March 26, 1996, the day

after the effective date of 19 CSR 25–30.050(4), shall be considered valid if done in accordance with the rules in effect at the time the reports were completed. When 19 CSR 25–30.051(4) went into effect in September, 1997, it was clearly and unambiguously intended to supercede the retrospective application of 19 CSR 20–30.050(4), limiting that rule's application to its effective date of March 25, 1996 and subsequent. Accordingly, because the maintenance report in question was completed prior to March 26, 1996, it is valid if done in compliance with 19 CSR 20–30.031(4), the rule in effect at the time it was completed, i.e. July 13, 1995. 19 CSR 25–30.051(4); *See also* 17 MoReg 1878.

The language of 19 CSR 20–30.031(4) does not require that a certificate of analysis be attached to maintenance reports, it requires only that specified forms be used to report maintenance checks on the various breath analyzer machines. 17 MoReg 1878. Director's maintenance report complies with the requirements of 19 CSR 20–30.031. Therefore, the trial court erroneously applied 19 CSR 25–30.051(4) and erroneously concluded the arresting officer did not have probable cause to arrest Driver. Accordingly, we reverse the trial court's judgment and remand for the trial court to reinstate the suspension of Driver's driving privileges.

Our disposition of Director's first and second points on appeal makes it is unnecessary to consider her third point.

Judgment reversed and remanded with directions.

KATHIANNE KNAUP CRANE, J. and LAWRENCE E. MOONEY, J., concur.