

# In the Missouri Court of Appeals
## Eastern District
### DIVISION ONE

| | | |
|---|---|---|
| MATTHEW S. BARTHOLOMEW, | ) | No. ED101750 and No. ED101751 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | |
| | ) | |
| DIRECTOR OF REVENUE, STATE | ) | Hon. Matthew Thornhill |
| OF MISSOURI, | ) | |
| | ) | |
| Appellant. | ) | FILED:  May 26, 2015 |

The Director of Revenue of the State of Missouri ("Director") appeals from the judgments of the trial court that ordered the Director to remove the administrative-alcohol suspension from Matthew Bartholomew's ("Driver") driving record and to reinstate Driver's driving privileges.[1]  We reverse and remand.

On October 1, 2012, Sergeant Terry Potter ("Sergeant Potter") of the Missouri Highway patrol observed a vehicle exceeding the posted speed limit and initiated a traffic stop of the car, which was operated by Driver.  Sergeant Potter noticed a strong smell of alcohol coming from the car, and asked Driver if he had been drinking.  Driver told Sergeant Potter that he had a few drinks about an hour prior to the traffic stop.  Driver agreed to submit to field sobriety tests. Segeant Potter administered several tests, including the horizontal gaze nystagmus ("HGN") test,

---

[1] Director had suspended Driver's driving privileges and regular driver's license and also had disqualified his commercial driver's license ("CDL").  Director appeals the two separate judgments of the trial court that: (1) ordered Director to remove the suspension from Driver's record and reinstate his driving privileges; and (2) ordered Director to reinstate his CDL privileges.  The separate appeals have been consolidated into one matter on appeal upon motion by Director, as the trial court's reasoning and judgment were identical in the two cases.

the walk-and-turn test, and the one-leg-stand test. Driver exhibited 6 out of 6 signs of intoxication on the HGN test, 4 out of 8 signs of intoxication on the walk-and-turn test, and 2 out of 4 signs of intoxication on the one-leg-stand test. Sergeant Potter asked Driver to rate his own intoxication on a scale of 1 to 10, to which Driver replied he was a 5 or 6.

Sergeant Potter arrested Driver and conveyed him to Troop C Headquarters, where he informed Driver of Missouri's Implied Consent Law and requested a breath sample. Driver complied, and the breathalyzer indicated that he had a blood alcohol content ("BAC") of 0.098%. Trooper J.T. Hedrick had performed maintenance on the breathalyzer used by Driver on September 7, 2012. Trooper Hedrick's maintenance report reflected that the breathalyzer was performing within established limits.

Director suspended Driver's driving privileges after an administrative hearing. As a consequence of the administrative suspension, Driver's commercial driver's license ("CDL") was disqualified for one year. Driver filed petitions for a trial *de novo* from the administrative suspension of his driving privileges and for review of the disqualification of his CDL, both in the Circuit Court of St. Charles County, Missouri.

The matter was tried in the circuit court on February 21, 2014. The principal issue at trial was the admission of Director's Exhibit A, which included Sergeant Potter's alcohol influence report, the breathalyzer maintenance report and supporting documents. Driver made a foundational objection to the admission of Exhibit A. The trial court admitted Exhibit A into evidence with the exception of the breathalyzer test result, which it deferred ruling on. Driver argued that the maintenance of the breathalyzer should have been done in accordance with the newly amended Department of Health & Senior Services ("DHSS") regulations that were in effect at the time of trial, which apparently required confirmation testing at three standards, 0.10

percent, 0.08 percent, and 0.04 percent. Director argued that the DHSS regulations that were in effect at the time that of the maintenance of the breathalyzer governed. The trial court expressed its belief, without ruling at that time, that if standards become stricter in favor of a defendant between arrest and the date of trial that the stricter standards would apply retroactively.

The trial court issued judgments on March 25, 2014 in both the suspension of driving privileges and disqualification of CDL cases. In both judgments, it found that Driver objected to the admission of the breathalyzer results on the ground that Director failed to present evidence of compliance with the appropriate state regulations. The trial court sustained Driver's objection, finding that the law in effect at the time of the hearing "mandated that the breath analyzer be calibrated at all three values" and that Director merely presented evidence that a single standard simulator solution was used for a single value, 0.10 percent, and presented no evidence of the use any other standard simulator solutions. The trial court found that Director failed to present sufficient credible evidence of compliance with the state regulations and with §577.020.3 RSMo (Cum. Supp. 2011).[2] The trial court found that Director failed to meet the burden of providing sufficient credible evidence that Driver drove with a BAC at or above 0.08 percent. It specifically did not address the issue of probable cause.[3] The trial court found in favor of Driver and ordered Director to remove immediately the administrative-alcohol suspension from Driver's driving record and to reinstate his driving privileges to the extent otherwise allowable by law.

Director filed a Motion for a New Trial on April 24, 2014 in which the Director argued that the regulations in effect at the time of the maintenance of the breathalyzer on September 7, 2012, applied, and that that version of the regulations controlled pursuant to 19 CSR 25-

---

[2] Unless noted otherwise, all further statutory citations are to RSMo (Cum. Supp. 2011).

[3] In the first paragraph of its judgment the trial court stated that "the parties stipulated as to probable cause" but later stated that because it found in favor of Driver on the issue of his BAC, it "need not address [Director]'s burden on the issue of probable cause. Nothing in the record shows that the parties did stipulate as to probable cause, and that issue was not reached by the trial court.

30.051(8) (2012). The trial court held a hearing on this motion, wherein Driver and Director recapitulated the arguments that each made at trial regarding the applicable regulations and standards. It found that DHSS passed new regulations effective December 30, 2012 that required calibration of breath testing instruments using three simulated solutions instead of merely one, and that this was a positive change in the law on calibration of breath testing instruments. It further found that due process required that Driver receive the benefit of the positive change, "even though he was arrested and provided a breath sample prior the date the new regulations came into effect." Accordingly, the trial court denied Director's motion.

Director now appeals from the trial court's judgments of March 25, 2014 and the appeals were consolidated in this Court.[4]

In her sole point relied on Director contends that the trial court misapplied the law in finding that maintenance on the breathalyzer was not performed in compliance with DHSS regulations in effect at the time of trial because DHSS regulations provide that maintenance reports shall be considered valid if performed in compliance with the regulations in effect at the time that the maintenance actually was done. Director argues that the maintenance report of Trooper Hedrick was completed in compliance with the regulations in effect when the maintenance was performed, including the regulation specifying that only one simulator solution need be used when performing a calibration check of the breath analyzer.

---

[4] It is helpful to have a chronology of the many relevant dates and events involved in this case:
   July 30 2004 - effective date of 19 CSR 25-30.051 (single simulator solution)
   September 7, 2012 - breathalyzer maintenance and report (single simulator solution)
   October 1, 2012 - arrest of Bartholomew
   December 30, 2012 - effective date of regulation that changed language to "and" apparently requiring
        three simulator solutions for maintenance.
   February 21, 2014- trial
   February 28, 2014 - effective date of emergency regulation that changed language to "or" clearly requiring
        only a single simulation solution for maintenance.
   March 25, 2014 - judgment.

We review a trial court's judgment reinstating driving privileges following an administrative suspension or revocation under the standard of Murphy v. Carron. 536 S.W.2d 30, 32 (Mo. banc 1976). White v. Director of Revenue, 321 S.W.3d 298, 307-08 (Mo. banc 2010). This Court will affirm the decision of the trial court if it is supported by substantial evidence, it is not against the weight of the evidence, and it does not erroneously or declare or apply the law. Id. We review declarations of law *de novo*. Moore v. Director of Revenue, 351 S.W.3d 286, 687 (Mo. App. 2011).

It is the Director's burden to establish a *prima facie* case for suspension of a driver's license by introducing evidence that at the time of a driver's arrest: (1) there was probable cause for arresting the driver for violating an alcohol-related offense; and (2) the driver's BAC exceeded the legal limit of 0.08 percent. §302.505.1; White, 321 S.W.3d at 309 n.11. It is the Director's burden to establish a basis for the revocation or suspension by a preponderance of the evidence. §302.535.1; Irwin v. Director of Revenue, 365 S.W.3d 266, 268 (Mo. App. 2012).

The Director may introduce evidence of a breathalyzer test to establish that a driver's BAC exceeded the legal limit. Irwin, 365 S.W.3d at 268-69. To lay a foundation for admission of the breathalyzer test into evidence, the Director must establish that the test was performed: (1) using the approved techniques and methods of the Division of Health; (2) by an operator holding a valid permit; (3) on equipment and devices approved by the Division of Health. Id. at 269.

The question of law at issue is whether, under the applicable regulations, the breathalyzer had to be tested one time at one concentration or at three concentrations. Administrative rules and regulations are interpreted under the same principles of construction as statutes. Beverly Enterprises-Missouri, Inc. v. Department of Social Services, Division of Medical Services, 349

5

S.W.3d 337, 352 (Mo. App. 2008); Trumble v. Director of Revenue, 985 S.W.2d 815, 819 (Mo. App. 1998). Words are given their ordinary, plain meaning. Beverly Enterprises, 349 S.W.3d at 352. Statutory interpretation is a question of law subject to *de novo* review. Bender v. Director of Revenue, 320 S.W.3d 167, 169 (Mo. App. 2010).

For breathalyzer results to be admissible, the machine used to measure the level of alcohol has to be properly maintained and tested. At the time of Driver's arrest on October 1, 2012, the pertinent regulation was 19 CSR 25-30.051 (2004), which provided that:

> (1) Standard simulator solutions, used to verify and calibrate evidential breath analyzers at the 0.10% or 0.100% level, shall be solutions from approved suppliers.
>
> (2) Standard simulator solutions, used to verify and calibrate evidential breath analyzers at the 0.04% or 0.040% level, shall be solutions from approved suppliers.
>
> …
>
> (4) Maintenance reports using Intoximeter standard simulation solution completed prior to the effective date of this rule shall be considered valid if the maintenance report was completed in compliance with the rules in effect at the time the maintenance was conducted.

Trooper Hedrick had tested the breathalyzer used on Driver on September 7, 2012, using a single simulator solution as required by the regulation then in force.

By the time that Driver went to trial on February 21, 2014, 19 CSR 25-30.051 had been amended twice: on November 30, 2012 (effective December 30, 2012) and on January 29, 2014 (effective February 28, 2014). The regulation in effect at the time of trial provided in relevant part that:

> (1) Standards used for the purpose of verifying and calibrating breath analyzers shall consist of standard simulator solutions or compressed ethanol-gas standard mixtures.

6

(2) Standard simulator solutions, used to verify and calibrate evidential breath analyzers, shall be solutions from approved suppliers. The standard simulator solutions used shall have a vapor concentration within five percent (5%) of the following values:

      (A) 0.10%;

      (B) 0.08%; and

      (C) 0.04%.

…

(8) Maintenance reports completed prior to the effective date of this rule shall be considered valid under this rule if the maintenance report was completed in compliance with the rules in effect at the time the maintenance was conducted.

The regulation in effect at the time of Driver's trial on February 21, 2014, included the savings clause provision in 19 CSR 25-30.051(8) (2012). See id. 19 CSR 25-30.051(8) (2012) provides that a maintenance report done prior to the date that the current regulation went into effect, December 30, 2012, "shall be considered valid under this rule" if it complied with the rules in place at when the maintenance actually was performed. In this situation, that was September 7, 2012. Trooper Hedrick's maintenance report, which was part of State's Exhibit A, complied with the rules in place on September 7, 2012, and should have been admitted into evidence.

The trial court excluded Trooper Hedrick's maintenance report, relying on United States v. Schooner Peggy, 5 U.S. 103, 110, 2 L.Ed. 49 (1801), a case that is more than 200 years old and that preceded the establishment of administrative regulatory agencies and administrative rules and regulations by the federal government by more than 75 years. The trial court's ruling was based on its view that the administrative revocation of Driver's driving privileges was "a quasi-criminal proceeding" and that "the criminal logic and how we approach those criminal cases" applied to the administrative revocation. The trial court is incorrect. Administrative revocation of a driver's license is not punishment; it cannot create the possibility of double

jeopardy.  State v. Kampe, 926 S.W.2d 942, 943 (Mo. App. 1996).  Administrative suspensions and revocations are civil proceedings, and the rules of criminal procedure do not apply.  Geist v. Director of Revenue, 179 S.W.3d 91, 394 (Mo. App. 2005).  Operating a motor vehicle while intoxicated gives rise to two separate and independent proceedings; one is civil and one is criminal, and the outcome of one proceeding has no effect or consequence on the other.  State v. Brightman. 388 S.W.3d 192, 197-98 (Mo. App. 2012).  The issuance of a driver's license "is no more than a personal privilege[.]"  Sparling v. Director of Revenue, 52 S.W.3d 11, 13 (Mo. App. 2001).

This Court has addressed essentially the same issue on at least two occasions.  In both Salamone v. Director of Revenue, 991 S.W.2d 749 (Mo. App. 1999) and Hunt v. Director of Revenue, 10 S.W.3d 52 (Mo. App. 1999), the trial courts excluded the maintenance reports for breathalyzers upon objection by the petitioner-drivers in trials *de novo* that the records failed to contain the certificate of analysis for the simulator solutions as required by the relevant regulation adopted in March 1996.  The breathalyzers in those cases were tested on December 27, 1995 and on July 13, 1995 respectively.  Salamone, 991S.W.2d at 751; Hunt, 10 S.W.3d at 150.  The trial courts reinstated the driving privileges in both cases.  Salamone, 991S.W.2d at 750; Hunt, 10 S.W.3d at 147.  The March 1996 regulation did not apparently have a savings clause, but the regulation in effect at the time of the trial, 19 CSR 25-30.051(4) (1997), provided in pertinent part that:

> Maintenance reports completed on or after March 26, 1996, and prior to the effective date of this rule [September 1, 1997] shall be considered valid under this rule if a certificate of analysis was supplied with the simulator solution. Maintenance reports completed prior to March 26, 1996, shall be considered valid under this rule if done in compliance with the rules in effect at the time the maintenance report was conducted.

We held that the regulation in effect at the time of the trials, which was effective as of September 1, 1997, superseded the regulation that took effect in March 1996, and that the savings clause of 19 CSR 25-30.051(4) applied, making breathalyzer maintenance reports completed before March 26, 1996, valid if they complied with the rules in effect at the time that the maintenance report was made. Salamone, 991S.W.2d at 751; Hunt, 10 S.W.3d at 150. In both cases this Court held that the trial court erred in excluding the maintenance reports and reversed and remanded for further proceedings. Salamone, 991S.W.2d at 751; Hunt, 10 S.W.3d at 150.

The trial court misapplied the law by finding that the maintenance done on the breathalyzer by Trooper Hedrick on September 7, 2012, was not done in compliance with DHSS regulations in effect at the time of trial because 19 CSR 25-30.051(8) (2012) applied. Accordingly, Trooper Hedrick's maintenance report of September 7, 2012, was valid because it was completed in compliance with the rules in effect on that date.

Driver argues that the savings clause of 19 CSR 25-30.051(8) (2012) does not apply because the regulation in effect on September 7, 2012, 19 CSR 25-30.051 (2004) was ambiguous in that it was not clear from that version of the regulation whether the police officer performing the maintenance test had to run the standard simulation solution at the 0.10 percent level or the 0.04 percent level, or at both levels. The sole basis for this argument is that the regulation was amended on November 30, 2012[5] and had the following language:

> (2) Standard simulator solutions, used to verify and calibrate evidential breath analyzers, shall be solutions from approved suppliers. The standard simulator solutions used shall have a vapor concentration within five percent (5%) of the following values:
> (A) 0.10%;
> (B) 0.08%; and
> (C) 0.04%.

---

[5] The effective date of that regulation was December 30, 2012. That version of the regulation was in turn amended on January 29, 2014, effective on February 28.2014, to change "and" to "or."

Driver argues that this change adding a third standard and the conjunction "and" must have been for the purpose of removing the alleged ambiguity about testing. This argument has no merit. There is no other support for this allegation of ambiguity other than a change was made to the regulation. No Missouri appellate court ever held it to be ambiguous in the approximately eight years that the 2004 version of 19 CSR 25-30.051 was in effect. Point sustained.[6]

The judgments of the trial court are reversed and remanded for further proceedings in accordance with this opinion.[7]

_____
CLIFFORD H. AHRENS, Judge

Lawrence E. Mooney, P.J., concurs.
Lisa Van Amburg, J., concurs.

---

[6] We need not address the issue of the meaning and effect of the word "and" in 19 CSR 25-30.051(2) , which was effective from December 30 2012 to February 27, 2014, to resolve the question raised in the present case. That issue is currently pending before the Missouri Supreme Court in Stiers v. Director of Revenue, SC94840.

[7] The trial court did not rule on the issue of whether there was probable cause, and accordingly we do not address that issue.