

# In the Missouri Court of Appeals
# Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| SAMUEL HIESTER, | ) | No. ED102985 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Ellen H. Ribaudo |
| DIRECTOR OF REVENUE, | ) | |
| | ) | |
| Respondent. | ) | FILED: February 23, 2016 |

Samuel Hiester ("Driver") appeals from the trial court's judgment, following a trial *de novo*, sustaining the Director of Revenue's ("Director's") decision to suspend Driver's license for driving with a blood-alcohol concentration ("BAC") of 0.08 percent or more, in violation of Section 302.505.1, RSMo (2000).  We affirm.[1]

## I.  Background

Driver was arrested upon probable cause to believe he was driving while intoxicated on August 6, 2014.  Driver consented to submit to a breath test on an Intox DMT breath analyzer[2], and the results showed his BAC was .164 percent, more than double the legal limit of .08

---

[1] This case is being handed down in conjunction with Philip Gallagher v. Dir. of Revenue, No. 102720 (Mo. App. E.D. Feb. 23, 2016).  In both cases, the respective drivers challenged the admissibility of the results of their breath tests due to the "provided from" language in the regulation.

[2] The Intox DMT is a forensic breath-testing device that measures ethanol (commonly termed "alcohol") and is based on the principles of infrared spectrometry. The DMT accurately determines the amount of alcohol in end-expiratory breath at the time the test is administered. Breath alcohol concentration is directly proportional to blood

percent. This led the Director to suspend Driver's license, and Driver filed a petition for a trial *de novo*.

At trial, Driver argued the results of the breath test should not be admissible as the compressed ethanol-gas mixture ("the Mixture") used to perform maintenance checks on the Intox DMT was not provided from an approved supplier under Department of Health and Senior Services regulations. The maintenance report reflected that Officer Matthew Loveless, the officer who performed the maintenance check, marked boxes to indicate the "Standard Supplier" of the Mixture was Intoximeters, Inc. ("Intoximeters"). Intoximeters is one of the approved suppliers listed by the Department of Health and Senior Services. See 19 CSR 25.30.051(6). The certificate of analysis of the Mixture, as well as Officer Loveless's testimony, indicated that Intoximeters was the supplier of the mixture and that Airgas USA, LLC ("Airgas") was the manufacturer.

The trial court found Officer Loveless's testimony credible, and in its judgment found that the regulations "do not make a distinction between supplier and manufacturer . . . ." Thus, the trial court found the results of the breath test admissible, and ultimately sustained the Director's suspension of Driver's license. This appeal followed.

## II. Discussion

In his sole point on appeal, Driver argues the trial court erred in overruling Driver's objection to the admission of his breath test results because the Director failed to establish the statutory compliance necessary to make the test admissible. Driver claims the Mixture used as the breath analyzer accuracy standard in the maintenance check of the equipment used was not "provided from" the proper company.

---

alcohol concentration. They need not be compared, since both are equally reliable and established measures of intoxication. See "Type III Operator Manual, Section 3-D: Intox DMT," Missouri Breath Alcohol Program, Breath Alcohol Operator Manual, published by Missouri Department of Health and Senior Services, updated June 2013.

Standard of Review

Upon appeal from a court-tried case, we will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. White v. Dir. of Revenue, 321 S.W.3d 298, 307-08 (Mo. banc 2010) (citing Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976)).

"The nature of our review is directed by whether the particular issue is a question of fact or law." Cortner v. Dir. of Revenue, 408 S.W.3d 789, 792 (Mo. App. E.D. 2013). Driver's claim involves interpretation of a regulation, and "[a]dministrative rules and regulations are interpreted under the same principles of construction as statutes." McGough v. Dir. Of Revenue, 462 S.W.3d 459, 462 (Mo. App. E.D. 2015). Statutory interpretation is a matter of law, which we review *de novo*. Bender v. Dir. of Revenue, 320 S.W.3d 167, 169 (Mo. App. E.D. 2010).

Analysis

The Director has the burden to establish by a preponderance of the evidence a prima facie case for suspension of a driver's license by introducing evidence that there was probable cause for arresting the driver for an alcohol-related offense and that the driver's BAC exceeded the legal limit of .08 percent. McGough, 462 S.W.3d at 462. To establish that a driver's BAC was over the legal limit, the Director may introduce evidence of the results of a breath analyzer test. Id. To lay a foundation for admission of those results, the Director must establish that the test was performed using the approved techniques and methods of the Department of Health and Senior Services, by an operator holding a valid permit and on equipment and devices approved by the Department. Id.

The Department has promulgated regulations regarding the maintenance of breath analyzers that must be followed in order for the results taken from that machine to be admissible

3

at trial. In relevant part, they provide that the "[c]ompressed ethanol-gas standard mixtures used to verify and calibrate evidential breath analyzers shall be mixtures provided from approved suppliers." 19 CSR 25-30.051(5). There are four approved suppliers listed in the regulation, including Intoximeters; Airgas is not an approved supplier. 19 CSR 25-30.051(6). Driver argues that the regulation requires the Mixture to not only be provided to law enforcement from one of those four approved suppliers, but to also be manufactured by one of those four approved suppliers. Driver claims the trial court erred in finding Intoximeters was an approved supplier when it did not manufacture the Mixture. We disagree.

Our goal in interpreting regulations is to ascertain the agency's intent and give effect thereto by considering the plain words used. Mo. Title Loans, Inc. v. City of St. Louis Bd. of Adjustment, 62 S.W.3d 408, 414 (Mo. App. E.D. 2001). We conclude that the plain meaning of "provided from approved suppliers" requires only proof that the entity that provided the gas mixture to law enforcement was an approved supplier; there is no further requirement of proof regarding the manufacturer or any other entity in the chain of supply.

The regulation refers only to the suppliers who provide the gas mixture and makes no mention of manufacturers. See 19 CSR 25-30.051(5)-(6). We must presume this choice of wording is not meaningless. See State Bd. of Registration for Healing Arts v. Boston, 72 S.W.3d 260, 265 (Mo. App. W.D. 2002). Choosing the word "supplier" and not "manufacturer" is important because suppliers and manufacturers are distinct entities. A "supplier" is one "engaged, directly or indirectly, in making a product available to consumers"; it "may be the seller, the manufacturer, or anyone else in the chain who makes the product available to the consumer." Black's Law Dictionary (10th ed. 2014) (internal quotation marks and citation omitted). On the other hand, a manufacturer is one "engaged in producing or assembling new

4

products." Id. Thus, Intoximeters need not have produced the product it provided in order to be considered a supplier under the regulations. It may be reasonable in some cases to infer that if a certain entity manufactured the product, it also supplied it to law enforcement. See, e.g., Selix v. Dir. of Revenue, 985 S.W.2d 380, 383 (Mo. App. E.D. 1999). But here no such inference is necessary—nor would it be reasonable to draw one—because there was evidence to the contrary. The evidence showed that the Mixture was manufactured by Airgas, which then sold it to its customer, Intoximeters. Intoximeters then supplied the gas mixture to law enforcement, the ultimate consumer of this product.

The evolution of this regulation also demonstrates that the manufacturer of the material used to verify and calibrate the breath analyzer is no longer relevant for the purpose of laying a foundation for the admission of results from that machine. At one time, the regulation required breath analyzers to be verified and calibrated using only simulator solutions, which had to be "certified by the manufacturer of that solution." See, e.g., McDonough v. Dir. of Revenue, 977 S.W.2d 278, 280 (Mo. App. E.D. 1998) (affirming exclusion of results where no evidence of solution manufacturer). But that requirement was removed and replaced with a requirement that the solution be "certified by the supplier." Changes thereafter simplified the requirements so that certification was not needed; rather, the solution needed only to have been "from approved suppliers," and that could be proven simply by showing that an approved supplier was listed on the maintenance report. See Sheridan v. Dir. of Revenue, 103 S.W.3d 878, 880-81 (Mo. App. E.D. 2003) (supplier's name on maintenance report was sufficient evidence that solution came from approved supplier; reversible error to exclude results solely because no certificate of analysis also in evidence). In 2012, the Department approved the use of compressed ethanol-gas mixtures, like that used in this case, to verify and calibrate breath analyzer machines. Again, the

5

regulation currently requires only that the gas mixture be "provided from approved suppliers," and no further certification is required.

These changes—from requiring certification by the manufacturer to simply requiring that the product be provided from an approved supplier—may signal that the Department now entrusts the approved suppliers with ensuring that the solution or gas mixture they provide to law enforcement meets Department standards, whether they manufacture it themselves or get it from another entity. See 19 CSR 25-30.051(5) (A)-(C) (identifying approved concentration values for gas mixtures). At the very least, the changes indicate that to lay the foundation for admissibility of a breath sample result, the Director need only prove that the gas mixture used by law enforcement to maintain the breath analyzer was provided from one of the approved suppliers listed in the regulation.

Driver argues that because the regulation says "provided *from*" it refers to the actual starting point of the Mixture, which would mean that Airgas is the supplier as it manufactured the Mixture. Driver contends Intoximeters was merely a distributor, no different than a delivery company like FedEx, and therefore it does not qualify as an approved supplier under the regulation. This argument is without merit because the analysis relies entirely on a particular preposition without regard to the meaning of the substantive term "supplier" that follows it. As shown above, Intoximeters fits squarely within the plain meaning of supplier, and further proof of the origins of the gas mixture is not required.

Intoximeters was clearly identified on the maintenance report as the supplier that provided law enforcement with the Mixture used to verify and calibrate the Intox DMT breath analyzer used to analyze Driver's BAC at the time of his arrest. Intoximeters is an approved

6

supplier under 19 CSR 25-30.051, and thus proper foundation was laid for the admission of the breath test results. Driver's sole point on appeal is denied.[3]

### III.  Conclusion

The judgment of the trial court is affirmed.

                                        _____

                                           ROY L. RICHTER, Judge

Robert G. Dowd, Jr., P.J., concurs.
Mary K. Hoff, J., concurs.

---

[3] Driver's motion for attorney's fees is also denied.