

# In the Missouri Court of Appeals
# Eastern District
## DIVISION ONE

| | | |
|---|---|---|
| PHILIP LORENZO GALLAGHER, | ) | No. ED102720 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | |
| | ) | Hon. Matthew E.P. Thornhill |
| DIRECTOR OF REVENUE, | ) | |
| | ) | Filed: |
| Appellant. | ) | February 23, 2016 |

The Director of Revenue appeals from the judgment of the trial court reinstating the driving privileges of Philip Gallagher, which were suspended after his arrest for driving while intoxicated. The Director argues that the trial court erred in excluding from evidence the breath sample results showing Gallagher's blood alcohol content ("BAC") was over the legal limit. We agree, and therefore reverse and remand.[1]

Gallagher was arrested for driving while intoxicated after a traffic stop, during which he performed poorly on field sobriety tests, displayed some indicia of intoxication and told the arresting officer he had "drank a lot." He agreed to provide a breath sample on an Alco Sensor IV breath analyzer, the results of which showed his BAC was .152 percent, well over the legal limit of .08 percent. His license was suspended, and Gallagher filed a petition for a trial de novo.

---

[1] This case is being handed down in conjunction with Heister v. Director of Revenue, ED 102985 (Mo. App. E.D. Feb. 23, 2016), in which this Court affirms the trial court's admission of the BAC evidence in that case for reasons identical to those set forth in this Opinion.

At trial, Gallagher objected to the admission of the breath sample results on the ground that the compressed ethanol-gas mixture used to maintain the breath analyzer was not provided from an approved supplier under Department of Health and Senior Services regulations. On the maintenance report, the inspecting officer had listed "Intoximeters" in the box labeled "Standard Supplier" of the gas mixture. Intoximeters, Inc. is an approved supplier under the regulation. See 19 CSR 25-30.051(6). The certificate of analysis accompanying that report indicated that the gas mixture was manufactured by Airgas Mid America and listed Intoximeters as Airgas's customer. The trial court found that Airgas was not an approved supplier under the regulation. The trial court reasoned that because Intoximeters did not manufacture the gas mixture, and instead merely served as a "middleman" between the manufacturer and law enforcement, Intoximeters was not the supplier. On that basis, it excluded the breath sample results and—there being no admissible evidence of Gallagher's BAC—ordered the Director to remove the suspension and reinstate his driving privileges. This appeal follows.

The Director has the burden to establish by a preponderance of the evidence a prima facie case for suspension of a driver's license by introducing evidence that there was probable cause for arresting the driver for an alcohol-related offense and that the driver's BAC exceeded the legal limit of .08 percent. McGough v. Director of Revenue, 462 S.W.3d 459, 462 (Mo. App. E.D. 2015). To establish that a driver's BAC was over the legal limit, the Director may introduce evidence of the results of a breath analyzer test. Id. To lay a foundation for admission of those results, the Director must establish that the test was performed using the approved techniques and methods of the

2

Department of Health and Senior Services, by an operator holding a valid permit and on equipment and devices approved by the Department. Id.

The Department has promulgated regulations regarding the maintenance of breath analyzers that must be followed in order for the results taken from that machine to be admissible at trial. In relevant part, they provide that the "[c]ompressed ethanol-gas standard mixtures used to verify and calibrate evidential breath analyzers shall be mixtures provided from approved suppliers." 19 CSR 25-30.051(5). There are four approved suppliers listed in the regulation, including Intoximeters; Airgas is not an approved supplier. 19 CSR 25-30.051(6). The Director argues that this regulation does not require that the gas mixture be manufactured by one of the approved suppliers listed therein, only that the gas mixture be provided to law enforcement from one of those approved suppliers. Although Airgas manufactured the gas mixture in this case, Intoximeters was clearly listed on the maintenance report as the supplier. Therefore, the Director contends, the trial court incorrectly concluded that because Intoximeters was not the manufacturer, it was not the supplier. We agree.

Because the trial court's exclusion of the evidence was based solely on interpretation of this regulation, the issue before us is a question of law that we review de novo. See McGough, 462 S.W.3d at 462. Administrative regulations are interpreted under the same principles of construction as statutes. Id. Our goal is to ascertain the agency's intent and give effect thereto by considering the plain meaning of the words used in the regulation. Missouri Title Loans, Inc. v. City of St. Louis Board of Adjustment, 62 S.W.3d 408, 414 (Mo. App. E.D. 2001). We conclude that the plain meaning of "provided from approved suppliers" requires only proof that the entity that

3

provided the gas mixture to law enforcement was an approved supplier; there is no further requirement of proof regarding the manufacturer or any other entity in the chain of supply.

The regulation refers only to the suppliers that provide the gas mixture and says nothing about manufacturers. See 19 CSR 25-30.051(5)-(6). We must presume this choice of wording is not meaningless. See State Board of Registration for Healing Arts v. Boston, 72 S.W.3d 260, 265 (Mo. App. W.D. 2002). Choosing the word "supplier" and not "manufacturer" is important because suppliers and manufacturers are distinct entities. A "supplier" is one "engaged, directly or indirectly, in making a product available to consumers"; it "may be the seller, the manufacturer, or anyone else in the chain [that] makes the product available to the consumer." Black's Law Dictionary (10th ed. 2014) (internal quotation marks and citation omitted). On the other hand, a manufacturer is one "engaged in producing or assembling new products." Id. Thus, Intoximeters need not have produced the product it provided in order to be considered a supplier under the regulations. It may be reasonable in some cases to infer that if a certain entity manufactured the product, it also supplied it to law enforcement. See, e.g., Selix v. Director of Revenue, 985 S.W.2d 380, 383 (Mo. App. E.D. 1999). But here no such inference is necessary—nor would it be reasonable to draw one—because there was evidence to the contrary. The evidence showed that the gas mixture was manufactured by Airgas, which then sold it to its customer, Intoximeters. Then Intoximeters supplied the gas mixture to law enforcement, the ultimate consumer of this product. The trial court erred in concluding that because it did not manufacture the gas mixture,

4

Intoximeters could not be deemed the supplier. There is simply no support for that conclusion in the plain language of the regulation.

The evolution of this regulation also demonstrates that the manufacturer of the material used to verify and calibrate the breath analyzer is no longer relevant for purpose of laying a foundation for the admission of results from that machine. At one time, the regulation required breath analyzers to be verified and calibrated using only simulator solutions, which had to be "certified by the manufacturer of that solution." See, e.g., McDonough v. Director of Revenue, 977 S.W.2d 278, 280 (Mo. App. E.D. 1998) (affirming exclusion of results where no evidence of solution manufacturer). But that requirement was removed and replaced with a requirement that the solution be "certified by the supplier." Changes thereafter simplified the requirements so that certification was not needed; rather, the solution needed only to have been "from approved suppliers," and that could be proven simply by showing that an approved supplier was listed on the maintenance report. See Sheridan v. Director of Revenue, 103 S.W.3d 878, 880-81 (Mo. App. E.D. 2003) (supplier's name on maintenance report was sufficient evidence that solution came from approved supplier; reversible error to exclude results solely because no certificate of analysis also in evidence). In 2012, the Department approved the use of compressed ethanol-gas mixtures, like that used in this case, to verify and calibrate breath analyzer machines. Again, the regulation currently requires only that the gas mixture be "provided from approved suppliers," and no further certification is required.

These changes—from requiring certification by the manufacturer to simply requiring that the product be provided from an approved supplier—may signal that the Department now entrusts the approved suppliers with ensuring that the solution or gas

5

mixture they provide to law enforcement meets Department standards, whether they manufacture it themselves or get it from another entity. See 19 CSR 25-30.051(5) (A)-(C) (identifying approved concentration values for gas mixtures). At the very least, the changes indicate that to lay the foundation for admissibility of a breath sample result, the Director need only prove that the gas mixture used by law enforcement to maintain the breath analyzer was provided from one of the approved suppliers listed in the regulation.

Gallagher argues that because the regulation says "provided *from*" it refers to the starting point of the physical movement of the gas mixture into the chain of supply. Under this interpretation, he contends, we must conclude that the gas mixture in this case was "provided from" Airgas and, because Airgas is not an approved supplier, the Director has not met its burden. To find that Intoximeters was the starting point of the gas mixture, Gallagher continues, when it was merely a distributor (not any different than a delivery company like Fed Ex) would subvert the meaning of the word "from" and lead to absurd results. This argument is without merit because the analysis relies entirely on a particular preposition without regard to the meaning of the substantive term "supplier" that follows it. As shown above, Intoximeters fits squarely within the plain meaning of supplier, and further proof of the origins of the gas mixture is not required. Gallagher also argues that Airgas should at least be considered *another* supplier of the gas mixture—albeit from further back in the supply chain—which he claims calls into question the admissibility of the breath sample results since Airgas is not approved under the regulation. But proof that every entity in the supply chain was an approved supplier is simply not required under the regulation.

In sum, Intoximeters was clearly identified as the supplier that provided law enforcement the gas mixture to verify and calibrate the breath analyzer used to test Gallagher's BAC at the time of his arrest. Intoximeters is an approved supplier under 19 CSR 25-30.051, and therefore proper foundation was laid for the admission of the breath sample results. Therefore, we find the trial court erred in excluding those results. Point is granted. We need not address the Director's alternative ground for reversal based on waiver of Gallagher's foundational objection.

The judgment of the trial court is reversed. Gallagher specifically challenged probable cause for his arrest in his petition for trial de novo and at the conclusion of the evidence at trial, but the trial court made no findings on probable cause given its disposition on the BAC evidence. Therefore, we must remand the case for further proceedings consistent with this opinion. See McGough, 462 S.W.3d at 464-65 n.5.

ROBERT G. DOWD, JR., Presiding Judge

Mary K. Hoff, J. and
Roy L. Richter, J., concur.

7