

# In the Missouri Court of Appeals
## Eastern District
### DIVISION ONE

| | | |
|---|---|---|
| DANIEL R. MCGOUGH, | ) | No. ED101870 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | |
| | ) | |
| DIRECTOR OF REVENUE, STATE | ) | Hon. Matthew Thornhill |
| OF MISSOURI, | ) | |
| | ) | |
| Appellant. | ) | FILED: May 26, 2015 |

The Director of Revenue of the State of Missouri ("Director") appeals from the judgment of the trial court that ordered the Director to remove the administrative-alcohol suspension from Daniel McGough's ("Driver") driving record and to reinstate Driver's driving privileges. We reverse and remand.

On October 19, 2012, Officer Scott Weeke of the O'Fallon Police Department responded to the report of a fight at a bar. As Officer Weeke approached the bar, dispatch told him that the parties involved in the fight were leaving the scene in two separate vehicles, a white Dodge Ram and a black Buick. Officer Weeke saw a white Dodge Ram driving through the parking lot of the bar. He turned on the overhead emergency lights on his police car, but the vehicle continued to proceed toward the exit of the parking lot. Officer Weeke then gave two bursts from his air horn and a brief burst from the emergency siren of his police vehicle. The Dodge Ram failed to stop, exited the parking lot, and headed north on Weldon Spring Road. Officer Weeke fully activated the siren and followed the Dodge Ram. The driver of the vehicle did not stop, but

rather turned east on Crusher Road and continued east until he reached the intersection with MO K, where he pulled into the lot of a service station and stopped.

Officer Weeke immediately arrested the operator of the Dodge Ram, Driver. Officer Weeke noted that there was a strong smell of alcohol coming from Driver, and that his eyes were watery, bloodshot, glassy, and staring. Driver stated that he had one beer. Officer Weeke told Driver to walk to the rear of the vehicle and lean against the bumper. He observed that Driver swayed as he walked to the back of the vehicle, and almost fell while trying to lean against the bumper of the Dodge Ram.

Officer Weeke arrested Driver for driving while intoxicated and took him to the police station. He informed Driver about Missouri's Implied Consent law. Driver agreed to take a breath test to determine his blood alcohol contenct ("BAC"). The breath test indicated that Driver had a BAC of 0.172 percent, substantially above the legal limit for intoxication. The breathalyzer used to test Driver was checked on September 29, 2012. Maintenance was performed using a single simulator solution at 0.10 percent, and the maintenance report showed that the breathalyzer was functioning within established parameters.

Director suspended Driver's driving privileges after an administrative hearing. Driver filed a petition for a trial *de novo* from the administrative suspension of his driving privileges in the Circuit Court of St. Charles County, Missouri on June 10, 2013.

The principal issue at the June 19, 2014 trial was the admission of Director's Exhibit A, which included Officer Weeke's alcohol influence report, the breathalyzer maintenance report, the breathalyzer test result and supporting documents. Driver made an objection to the

admission of Exhibit A.[1]  The trial court admitted Exhibit A into evidence with the exception of the breathalyzer test result, which it deferred ruling on.

The trial court issued a judgment on July 9, 2014.  It found that between the date of Driver's arrest and time of the hearing that the law "positively changed to mandate the breath analyzer be calibrated at three values" and that Director merely presented evidence that a single standard simulator solution was used for a single value, 0.10 percent, and presented no evidence of the use any other standard simulator solutions.  The trial court found that Director failed to present sufficient credible evidence of compliance with the state regulations and with §577.020.3 RSMo (Cum. Supp. 2011) and sustained Driver's "timely objection."[2]  The trial court found that Director failed to meet the burden of providing sufficient credible evidence that Driver drove with a BAC at or above 0.08 percent.  It specifically did not address the issue of probable cause. The trial court found in favor of Driver and ordered Director to remove immediately the administrative-alcohol suspension from Driver's driving record and to reinstate his driving privileges to the extent otherwise allowable by law.[3]

Director now appeals from the trial court's judgment of July 9, 2014.

---

[1] The transcript does not reflect a specific foundational basis for the objection to the breathalyzer test results in Exhibit A.  Director suggests in her brief that apparently there was a discussion off-the-record about the objection, but it was not placed on the record, with Driver's counsel referring to a ruling that the trial court was considering in presumably another similar case.  A statement by the trial court indicates that the issue was whether or not the maintenance of the breathalyzer on September 29, 2012 was performed in compliance with the requirements of the Department of Health and Senior Services ("DHSS").

[2] Unless noted otherwise, all further statutory citations are to RSMo (Cum. Supp. 2011).

[3] It is helpful to have a chronology of the many relevant dates and events involved in this case:
    July 30 2004 - effective date of 19 CSR 25-30.051 (single simulator solution)
    September 29, 2012 - breathalyzer maintenance and report (single simulator solution)
    October 19, 2012 - arrest of McGough.
    December 30, 2012 - effective date of regulation that changed language to "and" apparently requiring
        three simulator solutions for maintenance.
    February 28, 2014 - effective date of emergency regulation that changed language to "or" clearly
        requiring only a single simulator solution for maintenance.
    June 19, 2014 - trial
    July 9, 2014 - judgment

Director raises two points on appeal. To facilitate our analysis, we first will address Director's second point. In her second point relied on, Director contends that the trial court misapplied the law in finding that maintenance on the breathalyzer was not performed in compliance with DHSS regulations in effect at the time of trial because DHSS regulations provide that maintenance reports shall be considered valid if performed in compliance with the regulations in effect at the time that the maintenance actually was done. Director argues that the maintenance report of the breathalyzer was completed in compliance with the regulations in effect when the maintenance was performed, including the regulation specifying that only one simulator solution need be used when performing a calibration check of the breathalyzer.

We review a trial court's judgment reinstating driving privileges following an administrative suspension or revocation under the standard of Murphy v. Carron. 536 S.W.2d 30, 32 (Mo. banc 1976). White v. Director of Revenue, 321 S.W.3d 298, 307-08 (Mo. banc 2010). This Court will affirm the decision of the trial court if it is supported by substantial evidence, it is not against the weight of the evidence, and it does not erroneously or declare or apply the law. Id. We review declarations of law *de novo*. Moore v. Director of Revenue, 351 S.W.3d 286, 687 (Mo. App. 2011).

It is the Director's burden to establish a *prima facie* case for suspension of a driver's license by introducing evidence that at the time of a driver's arrest: (1) there was probable cause for arresting the driver for violating an alcohol-related offense; and (2) the driver's BAC exceeded the legal limit of 0.08 percent. §302.505.1; White, 321 S.W.3d at 309 n.11. It is the Director's burden to establish a basis for the revocation or suspension by a preponderance of the evidence. §302.535.1; Irwin v. Director of Revenue, 365 S.W.3d 266, 268 (Mo. App. 2012).

4

The Director may introduce evidence of a breathalyzer test to establish that a driver's BAC exceeded the legal limit.  Irwin, 365 S.W.3d at 268-69.  To lay a foundation for admission of the breathalyzer test into evidence, the Director must establish that the test was performed: (1) using the approved techniques and methods of the Division of Health; (2) by an operator holding a valid permit; (3) on equipment and devices approved by the Division of Health.  Id. at 269.

The question of law at issue is whether, under the applicable regulations, the breathalyzer had to be tested one time at one concentration or at three concentrations.  Administrative rules and regulations are interpreted under the same principles of construction as statutes.  Beverly Enterprises-Missouri, Inc. v. Department of Social Services, Division of Medical Services, 349 S.W.3d 337, 352 (Mo. App. 2008); Trumble v. Director of Revenue, 985 S.W.2d 815, 819 (Mo. App. 1998).  Words are given their ordinary, plain meaning.  Beverly Enterprises, 349 S.W.3d at 352.  Statutory interpretation is a question of law subject to *de novo* review.  Bender v. Director of Revenue, 320 S.W.3d 167, 169 (Mo. App. 2010).

For breathalyzer results to be admissible, the machine used to measure the level of alcohol has to be properly maintained and tested.  At the time of Driver's arrest on October 19, 2012, the pertinent regulation was 19 CSR 25-30.051 (2004), which provided that:

> (1) Standard simulator solutions, used to verify and calibrate evidential breath analyzers at the 0.10% or 0.100% level, shall be solutions from approved suppliers.

> (2) Standard simulator solutions, used to verify and calibrate evidential breath analyzers at the 0.04% or 0.040% level, shall be solutions from approved suppliers.

> …

> (4) Maintenance reports using Intoximeter standard simulation solution completed prior to the effective date of this rule shall be considered valid if the maintenance

5

report was completed in compliance with the rules in effect at the time the maintenance was conducted.

The breathalyzer used on Driver was tested on September 29, 2012, using a single simulator solution as required by the regulation then in force.

By the time that Driver went to trial in June 2014, 19 CSR 25-30.051 had been amended twice: on November 30, 2012 (effective December 30, 2012) and on January 29, 2014 (effective February 28, 2014). The regulation in effect at the time of trial provided in relevant part that:

(1) Standards used for the purpose of verifying and calibrating breath analyzers shall consist of standard simulator solutions or compressed ethanol-gas standard mixtures.

(2) Standard simulator solutions, used to verify and calibrate evidential breath analyzers, shall be solutions from approved suppliers. The standard simulator solutions used shall have a vapor concentration within five percent (5%) of the following values:
  (A) 0.10%;
  (B) 0.08%; or
  (C) 0.04%.

…

(8) Maintenance reports completed prior to the effective date of this rule shall be considered valid under this rule if the maintenance report was completed in compliance with the rules in effect at the time the maintenance was conducted.

The regulation in effect at the time of Driver's trial in June 2014 included the savings clause provision in 19 CSR 25-30.051(8) (2014). See id. 19 CSR 25-30.051(8) (2014) provides that a maintenance report done prior to the date that the current regulation went into effect, February 28, 2014 "shall be considered valid under this rule" if it complied with the rules in place at when the maintenance actually was performed. In this situation, that was September 29, 2012. The breathalyzer maintenance report, which was part of State's Exhibit A, complied with the rules in place on September 29, 2012, and should have been admitted into evidence as well as the breathalyzer test result.

The trial court excluded the breathalyzer test result on the basis that the change to 19 CSR 25-30.51 (2012) was a positive change and that due process required that Driver receive the benefit of "this positive change." The trial court is incorrect.[4]

Administrative revocation of a driver's license is not punishment; it cannot create the possibility of double jeopardy. State v. Kampe, 926 S.W.2d 942, 943 (Mo. App. 1996). Administrative suspensions and revocations are civil proceedings, and the rules of criminal procedure do not apply. Geist v. Director of Revenue, 179 S.W.3d 91, 394 (Mo. App. 2005). Operating a motor vehicle while intoxicated gives rise to two separate and independent proceedings; one is civil and one is criminal, and the outcome of one proceeding has no effect or consequence on the other. State v. Brightman. 388 S.W.3d 192, 197-98 (Mo. App. 2012). The issuance of a driver's license "is no more than a personal privilege[.]" Sparling v. Director of Revenue, 52 S.W.3d 11, 13 (Mo. App. 2001).

This Court has addressed essentially the same issue on at least two occasions. In both Salamone v. Director of Revenue, 991 S.W.2d 749 (Mo. App. 1999) and Hunt v. Director of Revenue, 10 S.W.3d 52 (Mo. App. 1999), the trial courts excluded the maintenance reports for breathalyzers upon objection by the petitioner-drivers in trials *de novo* that the records failed to contain the certificate of analysis for the simulator solutions as required by the relevant regulation adopted in March 1996. The breathalyzers in those cases were tested on December 27, 1995 and on July 13, 1995 respectively. Salamone, 991S.W.2d at 751; Hunt, 10 S.W.3d at 150. The trial courts reinstated the driving privileges in both cases. Salamone, 991S.W.2d at 750; Hunt, 10 S.W.3d at 147. The March 1996 regulation did not apparently have a savings

---

[4] We need not address the issue of the meaning and effect of the word "and" in 19 CSR 25-30.051(2) , which was effective from December 30 2012 to February 27, 2014, to resolve the question raised in the present case. That issue is currently pending before the Missouri Supreme Court in Stiers v. Director of Revenue, SC94840.

7

clause, but the regulation in effect at the time of the trial, 19 CSR 25-30.051(4) (1997), provided in pertinent part that:

> Maintenance reports completed on or after March 26, 1996, and prior to the effective date of this rule [September 1, 1997] shall be considered valid under this rule if a certificate of analysis was supplied with the simulator solution. Maintenance reports completed prior to March 26, 1996, shall be considered valid under this rule if done in compliance with the rules in effect at the time the maintenance report was conducted.

We held that the regulation in effect at the time of the trials, which was effective as of September 1, 1997, superseded the regulation that took effect in March 1996, and that the savings clause of 19 CSR 25-30.051(4) applied, making breathalyzer maintenance reports completed before March 26, 1996, valid if they complied with the rules in effect at the time that the maintenance report was made. Salamone, 991S.W.2d at 751; Hunt, 10 S.W.3d at 150. In both cases this Court held that the trial court erred in excluding the maintenance reports and reversed and remanded for further proceedings. Salamone, 991S.W.2d at 751; Hunt, 10 S.W.3d at 150.

The trial court misapplied the law by finding that the maintenance done on the breathalyzer on September 29, 2012, was not done in compliance with 19 CSR 25-30.051. The DHSS regulations in effect at the time of trial, which included the savings provision of 19 CSR 25-30.051(8) (2014), applied. Accordingly, the maintenance report of September 29, 2012, was valid because it was completed in compliance with the rules in effect on that date. Moreover, the trial court should have admitted the breathalyzer test result even without the savings clause provision. The regulations in effect as of the date of trial, June 19, 2014, require a simulator test at only one concentration out of a possible three choices: at "(A) 0.10%; (B) 0.08%; **or** (C) 0.04%." 19 CSR 25-30.051(2) (2014) (emphasis added). Point sustained.

In her first point relied on Director asserts that the trial court erred in sustaining Driver's objection to the admission of the breathalyzer test result because Driver's objection was not

8

specific and did not articulate a specific foundational ground for the objection as required to render a breathalyzer test result to be inadmissible. Because Director's second point relied on is dispositive, we need not address this claim.

The judgment of the trial court is reversed and remanded for further proceedings in accordance with this opinion.[5]

_____
CLIFFORD H. AHRENS, Judge

Lawrence E. Mooney, P.J., concurs.
Lisa Van Amburg, J., concurs.

---

[5] The trial court did not rule on the issue of whether there was probable cause, and accordingly we do not address that issue.