Gary M. Gaertner, Jr., Presiding Judge
Introduction
Everet J. Marquart (Appellant) appeals the trial court's judgment upholding the Director of Revenue's (Director) suspension of Appellant's driving privileges after Appellant was arrested upon probable cause to believe he was driving while intoxicated (DWI). Appellant argues the Director's evidence of Appellant's blood alcohol content was inadmissible because the Director failed to establish that the Franklin County Sheriff's Department maintained and administered the breath analyzer in accordance with state regulations. We affirm.
Introduction
On February 21, 2015, Franklin County Sheriff's Deputy Adam Albert (Deputy Albert) arrested Appellant for DWI. Prior to Appellant's arrest, Deputy Albert had observed Appellant driving a car with a headlight that appeared inoperative. Deputy Albert initiated a traffic stop, and Appellant pulled onto the gravel parking lot *58 of a radio station, moved into a grassy area next to the parking lot, and then backed up onto the gravel. Deputy Albert approached Appellant, who had opened his car door. Deputy Albert requested Appellant's driver license and proof of insurance, and he observed Appellant fumble with his wallet looking for his driver license. Deputy Albert noted Appellant's eyes were bloodshot and watery, his speech was lethargic, he mumbled at times, and his movements were slow and uncertain. Deputy Albert asked Appellant whether he had been drinking, and Appellant admitted he drank "a couple beers." Deputy Albert asked Appellant to exit the vehicle and observed that Appellant's movements were slow and uncertain. Deputy Albert again asked how much Appellant had to drink, and Appellant answered he had four beers. Deputy Albert asked whether Appellant would submit to a preliminary breath test, and Appellant refused.
Deputy Albert then placed Appellant under arrest for DWI based on his observations. Deputy Albert escorted Appellant to the front seat of his patrol car. Deputy Albert called another deputy and asked him to bring a breath analyzer instrument to his location. Detective Albert testified he did so instead of going to the police station so that he could obtain a breath test closer in time to the arrest. While Deputy Albert was waiting, he conducted a 15-minute observation period of Appellant's mouth. The other deputy arrived with an Alco-Sensor IV with printer unit (AS-IV-P) and put the unit in the back of Deputy Albert's patrol car. Deputy Albert administered a test of Appellant's breath using the AS-IV-P and it showed Appellant's blood alcohol content (BAC) was 0.119 percent.
The Director notified Appellant the department was suspending Appellant's driver's license, and Appellant requested administrative review. Following a hearing, the hearing officer sustained the suspension of Appellant's driving privileges. Appellant requested a trial de novo in the circuit court. At trial, Appellant objected to the admission of the results of the breath test as lacking foundation, arguing the Director failed to show that Detective Albert used the AS-IV-P in accordance with state regulations. The trial court entered judgment sustaining the revocation of Appellant's driving privileges, finding that Deputy Albert had probable cause to arrest Appellant for DWI and that Appellant's BAC exceeded the legal limit of 0.08 percent. This appeal follows.
Discussion
The Director had to show by a preponderance of the evidence "that at the time of [Appellant's] arrest: (1) there was probable cause for arresting [Appellant] for violating an alcohol-related offense; and (2) [Appellant's] BAC exceeded the legal limit of 0.08 percent." Bartholomew v. Dir. of Revenue, 462 S.W.3d 465, 469 (Mo, App. E.D. 2015). Appellant does not contest the trial court's finding that there was probable cause for his arrest. Rather, he argues that the Director failed to establish his BAC exceeded the legal limit because the result of the breath test was inadmissible due to lack of foundation. In Point I, Appellant argues that the Director failed to show compliance with 19 CSR 25-30.050 (2014) because Detective Albert impermissibly used the AS-IV-P in a mobile fashion. In Point II, Appellant further argues that Detective Albert also failed to calibrate the AS-IV-P after it was moved into his vehicle, in violation of 19 CSR 25-30.031 (2014).
Standard of Review
In this court-tried case, we "will affirm the trial court's judgment unless there is no substantial evidence to support *59 it, it is against the weight of the evidence, or it erroneously declares or applies the law." Bouillon v. Dir. of Revenue, 306 S.W.3d 197, 200 (Mo. App. E.D. 2010). Appellant's points on appeal also involve interpretation of sections of the Code of State Regulations. The construction of an administrative rule or regulation is a legal question that we review de novo. Bartholomew, 462 S.W.3d at 470.
Point I
Appellant argues the trial court erroneously admitted Appellant's breath test result without proper foundation because the Director failed to show compliance with 19 CSR 25-30.050 in that Detective Albert impermissibly used the AS-IV-P in a mobile fashion. We disagree.
The result of a breath analyzer test is permissible evidence regarding a driver's BAC. Bartholomew, 462 S.W.3d at 470. "To lay a foundation for admission of the breath [an]alyzer test into evidence, the Director must establish that the test was performed: (1) using the approved techniques and methods of the [Department] of Health; (2) by an operator holding a valid permit; (3) on equipment and devices approved by the Division of Health." Id. at 469 (citing Irwin v. Dir. of Revenue, 365 S.W.3d 266, 269 (Mo. App. E.D. 2012) ).
Here, only the first element is at issue. Appellant argues that the applicable regulations disallowed the use of the AS-IV-P here, specifically, the movement of the unit from one police vehicle to another. 19 C.S.R. 25-30.050 lists approved breath analyzer units, including the AS-IV-P, and then directs their usage as follows:
(2) Breath analyzers are to be used within buildings or vehicles used for driving-while-intoxicated enforcement. These breath analyzers are not approved for mobile use in boats or in outside areas.
The regulation contains no further definition of "vehicle used for driving-while-intoxicated enforcement." Appellant argues that a routine patrol car does not fall within this category.
The same principles we use to interpret statutes apply to our interpretation of administrative rules and regulations. Bartholomew, 462 S.W.3d at 470. "Our goal is to ascertain the agency's intent and give effect thereto by considering the plain meaning of the words used in the regulation." Gallagher v. Dir. of Revenue, 487 S.W.3d 24, 27 (Mo. App. E.D. 2016). We find the language "vehicle used for driving-while-intoxicated enforcement" is clear that it includes any vehicle that is used to enforce the offense of driving while intoxicated. The same car Deputy Albert used to initiate the stop of Appellant is the car in which Deputy Albert used the AS-IV-P. Such use is permissible under the plain language of the statute as written.
Appellant argues that this language refers only to specialized vehicles used at DWI checkpoints.[1] However, officers using patrol cars routinely arrest drivers for DWI, thus enforcing state statutes regarding DWI offenses. Deputy Albert testified that all of the patrol cars in the department's fleet are used for traffic stops, *60 which include DWI stops.[2] Appellant argues such an interpretation essentially renders the qualification "used for driving-while-intoxicated enforcement" meaningless because it includes all vehicles. However, the regulation plainly limits vehicle usage to within law enforcement vehicles. For example, had Deputy Albert moved the AS-IV-P to Appellant's vehicle to administer the test, such use would be improper under this regulation.
Further, the regulation enumerates an exclusion for "mobile use" in two specific locations: "boats" and "outside areas." 19 CSR 25-30.050(2). It is undisputed that Deputy Albert did not administer the breath analyzer on a boat, and inside a law enforcement vehicle is clearly not an "outside area." Though the AS-IV-P was outside during its movement between the two vehicles, it is undisputed that Deputy Albert only used it when it was inside the police vehicle. If the regulation intended to prohibit the transfer of units from one approved location to another, the regulation would state as much. The current language simply requires use of the unit either inside a building or inside a vehicle used in DWI enforcement, and Deputy Albert used the AS-IV-P in such a vehicle here. Point denied.
Point II
Appellant argues that the Director failed to lay a proper foundation for the results of Appellant's breath analysis because the Director failed to show that the AS-IV-P had been maintained in accordance with 19 CSR 25-30.031, which requires a maintenance check every time "a new instrument is placed into service." Appellant argues that the movement of the AS-IV-P to Deputy Albert's patrol car required a maintenance check under this section.[3] We find Appellant has waived this argument.
An objection must be timely made, meaning at the earliest opportunity after the objectional character of the evidence becomes apparent. Krieger v. Dir. of Revenue, 14 S.W.3d 697, 702 (Mo. App. E.D. 2000). Here, Appellant properly and timely objected that the BAC results lacked foundation, but only on the basis of 19 CSR 25-30.050(2). He did not raise any objection regarding maintenance checks on the unit or make any mention of 19 CSR 25-30.031. Appellant made general statements that the device was not used in accordance with regulations, but these are not sufficiently specific to permit the trial court to rule on the issue of maintenance checks. See Krieger, 14 S.W.3d at 702 (objection that test not done in accordance with regulations was "broad and theoretically encompassed any number of unspecified foundational grounds," thus was "not sufficient to deny the admissibility of the evidence").
*61 Without a proper and timely objection on this ground, the trial court properly considered the breath test result as a part of the Director's case. See id. (citing Sellenriek v. Dir. of Revenue, 826 S.W.2d 338, 341 (Mo. banc 1992) ("the foundational prerequisites are unnecessary where the test result is admitted in evidence without objection or by stipulation") ). Point denied.
Conclusion
The Director laid the proper foundation regarding the use of the breath analyzer here under 19 CSR 25-30.050(2), and Appellant waived any other foundational objections. The trial court's judgment is supported by substantial evidence, is not against the overwhelming weight of the evidence, and does not erroneously declare or apply the law. We affirm the trial court's judgment.
Robert M. Clayton III, J., concurs.
Angela T. Quigless, J., concurs.

We note that the term "DWI enforcement vehicle" was used frequently during oral argument when discussing the meaning of the regulation. While such a term, if contained in the regulation, may in fact have indicated a title for a special-use vehicle, the regulation as written encompasses vehicles with broader usage that also includes DWI enforcement. The regulation does not specify that vehicles must be used exclusively for DWI enforcement. We are bound to apply the plain language of the regulation as written.

We note the comments at oral argument that moving the unit to a routine patrol car was an atypical use for the AS-IV-P compared to bringing the suspect to a police station and using the breath analyzer at the station, but again, we must apply the plain language of the regulation as written.

19 CSR 25-30.031 requires the following:
(3) A Type II permittee shall perform maintenance checks on breath analyzers under his/her supervision at intervals not to exceed thirty-five
(35) days.... In addition, maintenance checks shall be completed when-
(A) A new instrument is placed into service; or
(B) The instrument has been serviced, repaired, or recalibrated.
We note that under the circumstances here, Appellant likely could not show that the movement of the AS-IV-P between patrol cars rendered the transferred AS-IV-P "a new instrument [ ] placed into service."