

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

JOSEPH FRANKLIN BAKER, )
                   Respondent, )
                               )
v. )    WD81325
                               )
DIRECTOR OF REVENUE FOR )   FILED: February 13, 2019
THE STATE OF MISSOURI, )
                   Appellant. )

### Appeal from the Circuit Court of Lafayette County
### The Honorable Kelly H. Rose, Judge

### Before Division Three: Anthony Rex Gabbert, P.J., and
### Victor C. Howard and Alok Ahuja, JJ.

Respondent Joseph Baker was arrested for driving while intoxicated. After his blood alcohol concentration tested over the legal limit, the Director of Revenue suspended his driving privileges. Baker then filed a petition for a trial *de novo* in the Circuit Court of Lafayette County. At trial, the circuit court refused to admit the results of the breath test performed on Baker. The court excluded the test results because it concluded that the location of the testing (inside a law enforcement patrol vehicle) violated regulations promulgated by the Department of Health and Senior Services ("DHSS"). After excluding the breath test results, the court found that the Director of Revenue had failed to prove that Baker had driven his vehicle with an excessive blood alcohol concentration, and it accordingly set aside the suspension of Baker's driver's license.

The Director of Revenue appeals. Because we conclude that the circuit court excluded the breath test results on an erroneous basis, we reverse, and remand the case to the circuit court for a new trial.

**Factual Background**

On May 8, 2017, Missouri State Highway Patrol Trooper Trent Baxter initiated a stop of Baker's vehicle in Lafayette County after observing that the vehicle had only one working taillight. Upon making contact with Baker, Trooper Baxter immediately detected a strong odor of alcohol. Trooper Baxter also observed that Baker's speech was slurred, and his eyes were bloodshot. The Trooper observed an open case of beer on the passenger-side floorboard, and an open beer can behind the front passenger seat. Baker stated that he had consumed about five beers.

Baker agreed to perform a series of field sobriety tests. Based on Baker's performance, Trooper Baxter arrested him for driving while intoxicated. The Trooper read Missouri's Implied Consent law to Baker, and Baker agreed to submit to a breath test. Baker was instructed to remove the chewing tobacco from his mouth, and after he did so Trooper Baxter performed a mouth check and began the 15-minute observation period. After completing the observation period, Trooper Baxter administered a breath test using an Alco-Sensor IV with Printer testing machine ("AS-IV-P"). The test was administered inside the Trooper's patrol car. Trooper Baxter's first two attempts to collect a breath sample failed because the testing device detected radio frequency interference ("RFI"). After Trooper Baxter turned off the radios in his own patrol car, and asked the other responding officers to turn off their radios, he was able to collect a valid breath sample. The testing machine indicated that Baker's blood alcohol concentration was .181%.

The Director suspended Baker's driving privileges pursuant to § 302.505, RSMo. The suspension of Baker's driver's license was upheld following an

2

administrative hearing.  Baker then petitioned the circuit court for a trial *de novo* pursuant to § 302.535, RSMo.

The circuit court conducted a bench trial on November 9, 2017.  At trial, the Director's counsel asked Trooper Baxter to testify regarding the result of Baker's breath test.  Baker's counsel objected on the grounds that the breath test was not conducted in an approved location.  Although the circuit court initially overruled Baker's objection, it later reversed its previous ruling, and sustained Baker's objection to the admission of the breath test results.  The court sustained Baker's objection because the form of Blood Alcohol Test Report promulgated by DHSS requires the operator to certify that "[n]o radio transmission occurred *inside the room* where and when this [breath analysis] was being conducted."  19 C.S.R. 25-30.060(3), Form #8 (emphasis added).  The court recognized that Trooper Baxter's patrol vehicle was a permissible location for conducting the breath test under 19 C.S.R. 25-30.050(2).  Nevertheless, the court reasoned that "[w]hen you got on this form it's to be done in a room, and this form has got to be used, it's in conflict with" 19 C.S.R. 25-30.050(2).  The court concluded that the Director had failed to establish that the breath test complied with the DHSS-mandated procedures because the test was not conducted inside a "room"; "[a] patrol car is not a room."

After the circuit court announced that it was excluding the breath test results, the Director made an offer of proof, during which Trooper Baxter testified that Baker's blood alcohol concentration was .181% based on the result of the breath test he performed in his patrol car.

The circuit court entered its judgment on November 29, 2017.  The court found that the Director had proven that Baker was arrested based on probable cause to believe that he had committed an alcohol-related traffic offense.  The circuit court also found that "the tests' administration in the front passenger seat of [Trooper] Baxter's patrol car satisfied the requirements of 19 CSR 25-30.050(2),"

3

which provides that "[b]reath analyzers are to be used within buildings or vehicles used for driving-while-intoxicated enforcement." The court nevertheless found that the test had been performed in an improper location, because the Blood Alcohol Test Report form promulgated by DHSS for use with the AS-IV-P required the device operator to certify that "[n]o radio transmission occurred inside the room where and when this was being conducted." The judgment states that "[t]his Court finds that [Trooper] Baxter's patrol car is not a room as required by the certification on Form #8."

Based on its "conclusion that the breath testing results are inadmissible," the court found "that there was no credible evidence that [Baker's] blood alcohol content was 0.08% or higher as required by Missouri law." The court therefore set aside the suspension of Baker's driving privileges.

The Director of Revenue appeals.

## Standard of Review

On appeal from a court-tried case, "'the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.'" *Hill v. Mo. Dep't of Conservation*, 550 S.W.3d 463, 466–67 (Mo. 2018) (quoting *White v. Dir. of Revenue*, 321 S.W.3d 298, 307–08 (Mo. 2010)); *see also Stiers v. Dir. of Revenue*, 477 S.W.3d 611, 614 (Mo. 2016). We review questions of law *de novo*. *Hill*, 550 S.W.3d at 467 (citing *Pearson v. Koster*, 367 S.W.3d 36, 43–44 (Mo. 2012)). Interpretation of the DHSS's regulations is a legal issue subject to *de novo* review. *See Stiers*, 477 S.W.3d at 614 (citation omitted); *see also Gallagher v. Dir. of Revenue*, 487 S.W.3d 24, 27 (Mo. App. E.D. 2016) (citation omitted).

4

## Analysis

The Director argues that the trial court erred in concluding that Baker's breath test results were inadmissible because the test was conducted in an improper location. We agree.

Section 302.505.1, RSMo provides that the Department of Revenue

> shall suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was eight-hundredths of one percent or more by weight . . . .

Thus, in order to support the suspension of an individual's driving privileges, the Director must prove that "(1) the driver was arrested on probable cause for violating an alcohol-related offense; and (2) the driver's [blood alcohol concentration] exceeded the legal limit of .08 percent." *Shanks v. Dir. of Revenue*, 534 S.W.3d 381, 386 (Mo. App. W.D. 2017) (citation and internal quotation marks omitted).

> To establish that a driver's [blood alcohol concentration] was over the legal limit, the Director may introduce evidence of the results of a breath analyzer test. To lay a foundation for admission of those results, the Director must establish that the test was performed using the approved techniques and methods of DHSS, by an operator holding a valid permit and on equipment and devices approved by the DHSS.

*Roam v. Dir. of Revenue*, 559 S.W.3d 1, 3 (Mo. App. E.D. 2018) (citing *Gallagher v. Dir. of Revenue*, 487 S.W.3d 24, 26 (Mo. App. E.D. 2016)); *see also* § 577.037, RSMo.

The DHSS's regulations expressly authorized Trooper Baxter to conduct a breath test in his patrol vehicle. Those regulations specifically identify the Alco-Sensor IV with Printer as an approved breath analyzer. 19 C.S.R. 25-30.050(1). The regulation continues:

> Breath analyzers are to be used within buildings or vehicles used for driving-while-intoxicated enforcement. These breath analyzers are not approved for mobile use in boats or in outside areas.

19 C.S.R. 25-30.050(2).

The circuit court correctly concluded that Trooper Baxter's patrol vehicle is a "vehicle used for driving-while-intoxicated enforcement" within the meaning of 19 C.S.R. 25-30.050(2). The Eastern District of this Court decided this precise issue in *Marquart v. Dir. of Revenue*, 549 S.W.3d 56 (Mo. App. E.D. 2018). The driver in *Marquart* – like Baker – challenged the use of an AS-IV-P inside a deputy sheriff's patrol vehicle. The Court rejected the driver's argument, and explained that the plain language of 19 C.S.R. 25-30.050(2) included all law-enforcement vehicles used to enforce traffic laws:

> We find the language "vehicle used for driving-while-intoxicated enforcement" is clear that it includes any vehicle that is used to enforce the offense of driving while intoxicated. . . .
>
> Appellant argues that this language refers only to specialized vehicles used at DWI checkpoints. However, officers using patrol cars routinely arrest drivers for DWI, thus enforcing state statutes regarding DWI offenses. Deputy Albert testified that all of the patrol cars in the department's fleet are used for traffic stops, which include DWI stops. Appellant argues such an interpretation essentially renders the qualification "used for driving-while-intoxicated enforcement" meaningless because it includes all vehicles. However, the regulation plainly limits vehicle usage to within law enforcement vehicles. For example, had Deputy Albert moved the AS-IV-P to Appellant's vehicle to administer the test, such use would be improper under this regulation.

*Id.* at 59–60 (footnotes omitted). In a footnote, the Court explained that "[t]he regulation does not specify that vehicles must be used *exclusively* for DWI enforcement," and it therefore included all law enforcement vehicles used to enforce driving while intoxicated laws, even if those vehicles were also used for other law enforcement purposes. *Id.* at 59 n.1.

Even though the trial court concluded that Baker's breath test was performed in a location specifically authorized by 19 C.S.R. 25-30.050(2), the court nevertheless found that the test had been performed in an improper location. It reached this conclusion based on the wording of the certification the device operator

6

is required to complete as part of the Blood Alcohol Test Report form promulgated by DHSS for use with the AS-IV-P. The report form promulgated in the DHSS's regulations contains the following certification at the bottom of the form:

| CERTIFICATION BY OPERATOR | BAC |
|---|---|

As set forth in the rules promulgated by the Department of Health and Senior Services related to the determination of blood alcohol by breath analysis, I certify that:

☐ 1. There was no deviation from the procedure approved by the department.

☐ 2. To the best of my knowledge the instrument was functioning properly.

☐ 3. I am authorized to operate the instrument.

☐ 4. No radio transmission occurred inside the room where and when this was being conducted.

19 C.S.R. 25-3.060, Form #8. The circuit court focused on the fourth required certification, which requires the operator to certify that "[n]o radio transmission occurred inside the room where and when this [breath test] was being conducted." Notably, the same certification appears in the DHSS report forms for _every_ breath testing device approved for use in Missouri. *See* 19 C.S.R. 25-3.060, Form #5 (for use with Intoxilyzer 5000); Form #7 (for use with Datamaster); Form #11 (for use with Intox DMT); Form #12 (for use with Intoxilyzer 8000); Form #13 (for use with Intox EC/IR II).

Baker argues that, even though 19 C.S.R. 25-30.050(2) permits breath tests to be conducted in "vehicles used for driving-while-intoxicated enforcement," such use is prohibited by the fourth certification on the report form, which requires the operator to certify that there was no radio frequency interference "inside *the room*" where the test was conducted. According to Baker, "[r]oom is defined as 'an area within a building that has its own walls, floor, ceiling, and door.'" Thus, according to Baker's argument, breath testing could _never_ be conducted inside a "vehicle[ ]

used for driving-while-intoxicated enforcement" despite the explicit authorization found in 19 C.S.R. 25-30.050(2), because such a vehicle is not "a building."

Baker's argument ignores fundamental interpretive principles applicable to the DHSS's regulations. "Administrative regulations are interpreted under the same principles of construction as statutes." *Gallagher v. Dir. of Revenue*, 487 S.W.3d 24, 27 (Mo. App. E.D. 2016) (citation omitted). A fundamental principle of statutory (and thus, regulatory) construction is that "[t]he provisions of a legislative act must be construed and considered together and, if possible, all provisions must be harmonized and every clause given some meaning." *Dickemann v. Costco Wholesale Corp.*, 550 S.W.3d 65, 68 (Mo. 2018) (citation and internal quotation marks omitted).

Baker's reading of the certification language in Form #8—which would limit the administration of breath tests to rooms inside buildings—would have the effect of completely nullifying the clause in 19 C.S.R. 25-30.050(2) which permits breath tests to be conducted in "vehicles used for driving-while-intoxicated enforcement." Baker's reading thus violates the principle that we should seek to harmonize the language of the regulation and the report form if possible. And a harmonious reading of the two provisions is plainly feasible. Although Baker relies on a restrictive definition of the word "room," which limits a "room" to an enclosed space *within a building*, that is hardly the only—or even primary—meaning of the word "room." Instead, the noun "room" is defined in a leading dictionary as follows:

> **1 a :** unoccupied area **:** SPACE <increasing population requires more ~> <infinity of ~ in the reaches of the universe> **b :** unoccupied area or space sufficient for additional accommodation <~ at the inn> <~ for pasture> <~ to swing a cat in> <tearing down tenements to make ~ for a new building> **2 a :** a particular area or limited portion of space **:** COMPASS <plenty of ~ between the houses> <a small car requires little ~> . . . **4 a :** a part of the inside of a building, shelter, or dwelling usu. set off by a partition . . . **:** CHAMBER . . . .

WEBSTER'S THIRD NEW INT'L DICTIONARY 1972 (unabridged ed. 1993).

8

Consistent with the canons of construction discussed above, we reject Baker's restrictive definition of "room," and instead interpret "room" to refer to a defined or enclosed space. This interpretation of "room" has the effect of harmonizing the certification on Form #8 with 19 C.S.R. 25-30.050(2), because the reference to "room" in Form #8's certification section does not conflict with the regulation's authorization to perform breath tests in "vehicles used for driving-while-intoxicated enforcement."

Baker would not prevail even if the certification section of Form #8 were deemed to be in irreconcilable conflict with 19 C.S.R. 25-30.050(2). Where two statutes conflict, "if one statute deals with a particular subject in a general way and the second statute deals with the subject matter in a more specific way, the more specific provision prevails." *Zoological Park Subdistrict of the Metro. Park Museum Dist. v. Smith*, 561 S.W.3d 893, 899 (Mo. App E.D. 2018) (citing *Anderson ex rel. Anderson v. Ken Kauffman & Sons Excavating, L.L.C.*, 248 S.W.3d 101, 107–08 (Mo. App. W.D. 2008) (*en banc*)). In this case, 19 C.S.R. 25-30.050(2) specifically defines the locations in which breath testing may be conducted. It provides that breath testing may be conducted in buildings or in "vehicles used for driving-while-intoxicated enforcement," but not in boats or outside areas. To the extent of any conflict between the specification of permissible locations for breath testing in 19 C.S.R. 25-30.050(2), and the certification section of Form #8, the regulation must prevail.

The Missouri Supreme Court has specifically held that DHSS's blood alcohol testing <u>regulations</u> control over contrary provisions in the <u>reporting forms</u> DHSS has promulgated. In *Stiers v. Director of Revenue*, 477 S.W.3d 611 (Mo. 2016), the Court interpreted a DHSS regulation which provided that "[t]he standard simulator solutions used [to calibrate breath analyzers] shall have a vapor concentration within five percent (5%) of the following values: (A) 0.10%; (B) 0.08%; <u>and</u>

9

(C) 0.04%." 477 S.W.3d at 615 (quoting 19 C.S.R. 25-30.051.2; emphasis added by *Stiers*). The Court held that "[t]he regulation's use of the conjunction 'and' on its face seems to require that three simulator solutions set at different concentration levels be used to calibrate each breath analyzer." *Id.* Although the language of the relevant regulation required the use of three test solutions, the Director argued that the DHSS's reporting form provided that "[o]nly one standard is to be used per maintenance report." *Id.* at 616 (quoting 19 C.S.R. 25-30.031, Report #7).

The Supreme Court rejected the Director's attempt to rely on language from a reporting form to limit or alter the meaning which would otherwise be given to the plain language of the DHSS regulation itself. The Court explained that,

> [a] direction in the middle of a form used to record a test . . . is an odd place to set out the general rules for conducting the tests in the first instance. Normally, the governing law is set out in a regulation's text. . . .
>
> . . . . A line taken out of context from a form cannot change the meaning of this clear language [in 19 C.S.R. 25-30.051.2] requiring use of three solutions.

*Id.* at 616–17.

Baker's reliance on a certification provision in Form #8, to contradict and nullify the plain meaning of 19 C.S.R. 25-30.050(2), is foreclosed by the Missouri Supreme Court's decision in *Stiers*. As in *Stiers*, in this case the plain language of the regulation authorizes breath tests to be conducted in "vehicles used for driving-while-intoxicated enforcement." The use of a single word in a certification provision in a form, addressing a separate issue, "cannot change the meaning of this clear language" of 19 C.S.R. 25-30.050(2). *Stiers*, 477 S.W.3d at 617. As *Stiers* recognized, the certification section at the bottom of a report form "is an odd place to set out the general rules for conducting the tests in the first instance." *Id.* at 616. We will not read the word "room" in Form #8 to have the significant substantive effect which Baker ascribes to it.

As the circuit court itself recognized, 19 C.S.R. 25-30.050(2) expressly authorized Trooper Baxter to conduct a breath test in his patrol vehicle. The circuit court misinterpreted the governing regulations when it held that the breath test results must be excluded because the test was conducted in an improper location.

Because the circuit court excluded the breath test results from evidence on an erroneous basis, the circuit court's judgment is reversed, and the case is remanded to the circuit court for a new trial.

## Conclusion

The judgment of the circuit court is reversed, and the case is remanded for a new trial.

Alok Ahuja, Judge

All concur.

11