

# In the Missouri Court of Appeals
# Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| WILLIAM HENKE, | ) | No. ED108287 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| v. | ) | Cause No. 1811-CC01199 |
| | ) | |
| DIRECTOR OF REVENUE, STATE | ) | Honorable Matthew E.P. Thornhill |
| OF MISSOURI, | ) | |
| | ) | |
| Appellant. | ) | Filed: September 15, 2020 |

### Introduction

The Director of Revenue (Director) appeals the judgment of the trial court, which reinstated Respondent William Henke's (Henke) driving privileges after the Director had suspended them based on Henke's arrest for driving while intoxicated (DWI). The Director argues the trial court improperly excluded evidence of Henke's blood alcohol content (BAC) because the Director did not establish that the Intox EC/IR II breath analyzer used to determine Henke's BAC was manufactured or supplied by Intoximeters, Inc. in St. Louis, Missouri. We reverse.

### Background

On June 19, 2018, Officer Chris Sinnokrak (Officer Sinnokrak) of the O'Fallon Police Department responded to the scene of an accident, where a moving car had struck a

parked vehicle, turned on its side, and caught fire. Officer Sinnokrak interviewed Henke at the scene, who admitted driving the vehicle with a passenger, Jessica Cory (Cory). Henke told Officer Sinnokrak that he did not know how the accident happened. Cory did not remember either. Both appeared intoxicated. Officer Sinnokrak smelled a strong odor of alcohol on Henke and observed him to have bloodshot, glassy eyes. Henke admitted he had been drinking vodka, and that he drank more than usual that day.

Officer Sinnokrak administered field sobriety tests, and Henke performed poorly on each. Officer Sinnokrak placed Henke under arrest. At the police department, Officer Sinnokrak administered a test of Henke's breath using an Intox EC/IR II breath analyzer. Officer Sinnokrak completed the accompanying blood alcohol test report form provided by the Department of Health and Senior Services (DHSS), which reflects that Henke's BAC was .153 percent.

The Director notified Henke it was suspending Henke's driving privileges, and Henke petitioned the trial court for a trial *de novo*. At trial, Henke objected to the admission of the breath test result, arguing that the Director failed to establish a foundation for admission of the test because the Director presented no evidence that the Intox EC/IR II utilized to collect Henke's breath sample was manufactured or supplied by Intoximeters, Inc. in St. Louis. Henke argued 19 CSR 25-30.050(1) requires that the Director establish not only that the police used an approved breath analyzer, but that such machine was manufactured or supplied by the company listed in the regulation. The trial court agreed and excluded the evidence of Henke's BAC. Accordingly, the trial court reversed the suspension of Henke's driving privileges. This appeal follows.

Discussion

The Director's sole point on appeal is that the trial court erroneously interpreted 19CR 25.30.050(1) as containing a foundational requirement that the Director must establish the manufacturer or supplier of an approved breath analyzer used to determine a person's BAC in order to introduce the BAC test result into evidence. We agree.

On appeal from a court-tried case, we will affirm the trial court's judgment "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." White v. Dir. of Revenue, 321 S.W.3d 298, 307-08 (Mo. banc 2010). The Director's point on appeal also involves interpretation of a section of the Missouri Code of State Regulations. The construction of an administrative rule or regulation is a legal question that we review *de novo*. Bartholomew v. Dir. of Revenue, 462 S.W.3d 465, 470 (Mo. App. E.D. 2015).

In order to support the suspension of Henke's driving privileges, the Director had to show by a preponderance of the evidence "that at the time of [Henke's] arrest: (1) there was probable cause for arresting [Henke] for violating an alcohol-related offense; and (2) [Henke's] BAC exceeded the legal limit of 0.08 percent." Id. at 469. The existence of probable cause for Henke's arrest for DWI is not at issue. Rather, the trial court found the Director had failed to establish Henke's BAC exceeded the legal limit because the trial court found the Director did not lay the proper foundation for admission of the breath test result here into evidence.

To lay a foundation for the admission of breath analyzer test results, the Director must establish that the test was performed: "(1) by following the approved techniques and methods of the Division of Health; (2) by an operator holding a valid permit; (3) on equipment and devices approved by the division." Carvalho v. Dir. of Revenue, 586

3

S.W.3d 262, 267 (Mo. banc 2019) (quoting Stuhr v. Dir. of Revenue, 766 S.W.2d 446, 449 (Mo. banc 1989)).  Here, the trial court found that the Director failed to establish only the third element, that the test of Henke's BAC was performed on equipment and devices approved by DHSS.

19 CSR 25-30.050 (2014)[1] provides the following:

(1) Approved breath analyzers are —

| NAME OR ITEM | MANUFACTURER OR SUPPLIER |
| --- | --- |
| . . . Intox EC/IR II | Intoximeters, Inc., St. Louis, MO |

The trial court held that because the regulation specifies the manufacturer or supplier of each approved breath analyzer, in order for the BAC result to be admissible, the Director must prove not only that it used a specific type of breath analyzer named in the regulation, but also that it obtained the machine from a manufacturer or supplier listed in the regulation.  The Director argues that establishing the manufacturer or supplier has no bearing on the reliability of the test results under the regulations, and that because the operators followed all regulations to ensure proper functioning of the Intox EC/IR II here, identifying it by name and serial number, the test results were admissible.

"The same principles we use to interpret statutes apply to our interpretation of administrative rules and regulations."  Marquart v. Dir. of Revenue, 549 S,W,3d 56, 59 (Mo. App. E.D. 2018) (citing Bartholomew, 462 S.W.3d at 470).  "Our goal is to ascertain the agency's intent and give effect thereto by considering the plain meaning of the words used in the regulation."  Id. (quoting Gallagher v. Dir. of Revenue, 487 S.W.3d 24, 27

---

[1] This regulation has since been amended with an updated list of approved breath analyzers, effective March 30, 2020.

4

(Mo. App. E.D. 2016)). In so doing, we "should take into consideration statutes involving similar or related subject matter when those statutes shed light on the meaning of the statute being construed." State v. Knapp, 843 S.W.2d 345, 347 (Mo. banc 1992). Specifically, "[w]hen the same or similar words are used in different places within the same legislative act and relate to the same or similar subject matter, then the statutes are *in pari materia* and should be construed to achieve a harmonious interpretation of the statutes." Id. (quoting Citizens Bank & Trust Co. v. Dir. of Revenue, 639 S.W.2d 833, 835 (Mo. banc 1982)).

In addition to 19 CSR 25-30.050 identifying approved breath analyzers, 19 CSR 25-30.060 (2014) sets out an operational checklist for each approved breath analyzer. The stated purpose of the regulation is to provide such procedures "so that they can be introduced in court to show that operators of breath analyzers have adhered strictly to the operating procedures set forth and approved by [DHSS]." Subsection (6) addresses the Intox EC/IR II, stating that, "the procedures on the form incorporated within the instrument software shall be performed and the form shall be completed." Officer Sinnokrak completed the DHSS operational checklist form when he tested Henke's BAC. This form is entitled "Blood Alcohol Test Report – Intox EC/IR II," and it contains a space to note the instrument's serial number. There is no space on the form to note the manufacturer or supplier of the Intox EC/IR II used.

In contrast, 19 CSR 25-30.051 defines the approved materials used for verifying and calibrating breath analyzers. Subsections (2) and (5) state that for either type of material used, it "*shall* be . . . from approved suppliers" (emphasis added). The regulation goes on to list approved suppliers of each type of material. 19 CSR 25-30.051(3), (6).

Accordingly, on the DHSS maintenance report form for the Intox EC/IR II, there are spaces to list the type of material used to verify and calibrate the machine, as well as the supplier of the material, lot number, and expiration date. This Court has previously acknowledged that the Director must establish that the calibration material is from an approved supplier in order for the breath test results to be admissible. Gallagher, 487 S.W.3d at 28.

We find that these additional regulations shed light on the meaning of the listed manufacturer or supplier in 19 CSR 25-30.050. Had DHSS intended to require that an operator verify the supplier of the Intox EC/IR II, it could have specified as much in the regulation, as it did regarding the calibration material. The fact that 19 CSR 25-30.050 merely notes the manufacturers or suppliers, rather than stating that such machines *shall* come from a particular manufacturer or supplier, suggests that Intoximeters, Inc. is the only provider of an Intox EC/IR II, and thus such language would be unnecessary. The regulation appears simply to notify police departments where they may obtain approved breath analyzers. Moreover, when promulgating the operational checklist form, intended for use in court to demonstrate strict adherence to DHSS operational procedures, DHSS could have provided a space to list the manufacturer or supplier of the breath analyzer, as it did on the maintenance form for the calibration material. The differences here are intentional and meaningful.

Furthermore, the Missouri Supreme Court has made a distinction between regulations addressing the method of conducting blood tests, and those concerning procedural matters. In Carvalho v. Director of Revenue, the appellant argued the Director failed to prove that the operator conducting the required maintenance check on the breath analyzer used in that case had submitted a copy of the report to DHSS within the time

6

period required by the regulations. 586 S.W.3d at 268. The court found that such failure was not a foundational bar to the breath test results, but rather that the Director had satisfied the three foundational elements. Id. The court reasoned that where there are "regulations concerning the proper methods of *conducting* blood alcohol tests . . .[,] the state must demonstrate absolute and literal compliance with these regulations prerequisite to introducing the test results into evidence." Id. at 267-68 (quoting State v. Regalado, 806 S.W.2d 86, 88 (Mo. App. W.D. 1991)); see also Hearne v. Dir. of Revenue, 559 S.W.3d 66, 70 (Mo. App. E.D. 2018) (distinguishing regulations "governing the actual *performance*" of maintenance check from regulations "governing collateral issues which do not affect the actual performance or validity of the test itself").

Likewise, the Director here satisfied the three foundational elements; specifically, that Officer Sinnokrak used an approved breath analyzer to conduct the test of Henke's breath. In light of the language of 19 CSR 25-30.050, and in context with the other regulations addressing procedures for maintaining and using breath analyzers, we conclude 19 CSR 25-30.050 does not require the Director to establish the supplier or manufacturer of an approved breath analyzer. Evidence that the police used an approved breath analyzer from those listed in the regulation is sufficient to lay a foundation for admissibility of the breath test results. In excluding the BAC test result here, the trial court erroneously applied the law. Point granted.

### Conclusion

Because we find the trial court erroneously excluded evidence of Henke's BAC, we reverse the trial court's judgment. We remand to the trial court for further proceedings consistent with this opinion.[2]

_____
Gary M. Gaertner, Jr., Presiding Judge

Philip M. Hess, J. and
Michael E. Gardner, J., concur.

---

[2] We note that while Henke did not challenge the existence of probable cause for his arrest at trial, the trial court did not make a specific finding that probable cause existed. Thus, we must remand to the trial court for further proceedings.